**TANK v. UNITED STATES,**
and four other cases.

(Circuit Court of Appeals, Seventh Circuit. June 11, 1925. Rehearing Denied October 1, 1925.)

Nos. 3517–3521.

**1. Post office ⚖=48(4)—Indictment held sufficient.**

Indictment charging defendants with having devised a scheme to defraud and obtain money by false pretenses, and for purpose of executing it with having deposited in and received from the mails letters, certificates, and the like, and charging in usual language conspiracy to commit crimes and offenses already charged, *held* sufficient under Criminal Code, §§ 37, 215 (Comp. St. §§ 10201, 10385).

**2. Criminal law ⚖=1159(2, 4)—Circuit Court of Appeals cannot weigh evidence or credibility of witnesses.**

Circuit Court of Appeals cannot weigh evidence or credibility of witnesses.

**3. Criminal law ⚖=1159(2)—Error assigned on insufficiency of evidence presents question only as to whether evidence in record will sustain verdict.**

Assignment of error on ground of insufficiency of evidence can only present question as to whether there is evidence in record which, if believed by jury, would sustain verdict.

**4. Criminal law ⚖=1159(4)—Jury's finding on credibility of witnesses not disturbed.**

Credibility of defendants as witnesses is for jury, and its finding cannot be disturbed.

**5. Witnesses ⚖=287(1)—Overruling objection to government witness' redirect examination after recross-examination held without error.**

In prosecution for using mails to defraud, where defense on recross-examination had asked government witness to distinguish between statements he testified to and theories he had in mind in reference to matter, there was no error in permitting him to state in redirect examination what the theories were.

**6. Conspiracy ⚖=45—In prosecution for fraudulent use of mails to sell corporate stock, testimony trustee in bankruptcy as to assets held not too remote.**

Where indictment charged in setting forth scheme to defraud by use of mails that stock of corporation sold pursuant to scheme would be and was of little or no value, and charged continued conspiracy from June 27, 1921, to October 12, 1922, testimony of trustee in bankruptcy, who took over assets of corporation in October, 1922, as to what assets then were, *held* not too remote; it being during continuance of the conspiracy as charged.

**7. Criminal law ⚖=419, 420(12)—Testimony held not to violate hearsay rule.**

Trustee in bankruptcy, testifying as to assets of corporation and refreshing recollection by reference to bankruptcy records, *held* not to have violated hearsay rule; he not having been asked to state contents of such papers, but to state a fact which he answered by reference to records.

**8. Criminal law ⚖=419, 420(12)—Exceptions to hearsay rule stated.**

Book entries in regular course of business, made at time by one whose duty it is to make them, are exceptions to rule against hearsay, and solemn findings and recitals of fact in judicial or semijudicial proceedings should be held to be evidence of fact so found and recited.

In Error to the District Court of the United States for the Eastern District of Wisconsin.

Henry G. Tank, Edward Grieb, Edwin W. Berry, William G. Nolan, and Michael J.

Manion, among others, were indicted for violating Criminal Code, §§ 215, 37. Defendant Manion was convicted on a single count of violation of section 215 only, and the other named defendants of violations of both sections, and they separately bring error. Cases consolidated. Affirmed.

Adolph G. Schwefel, of Milwaukee, Wis., for plaintiff in error Tank.

Irving A. Fish, of Milwaukee, Wis., for plaintiff in error Grieb.

David D. Stansbury, of Chicago, Ill., for plaintiff in error Berry.

W. B. Rubin, of Milwaukee, Wis., for plaintiff in error Manion.

Sylvester R. Rush, of Omaha, Neb., for the United States.

Before PAGE and ANDERSON, Circuit Judges, and LINDLEY, District Judge.

ANDERSON, Circuit Judge. Plaintiffs in error, together with 18 others, were jointly indicted in the District Court for violating sections 215 and 37 of the Criminal Code (Comp. St. §§ 10385, 10201). The indictment contains 19 counts, the first 18 charging violations of section 215 and the nineteenth a conspiracy to violate that section. A number of the defendants pleaded guilty, two were acquitted by the jury, and plaintiffs in error, with four others, were found guilty; Manion upon the first 18 counts, and Grieb, Berry, Tank, and Nolan upon all counts. Plaintiffs in error sued out separate writs and filed separate assignments of error. The cases were all heard together and will be so disposed of.

Grieb assigned 49 errors. His counsel in his brief says "they are extremely voluminous," and we may add many of them are utterly frivolous. Tank, Berry, Nolan, and Manion assigned with less volume, but with quite as little substantiality. Many of the assignments are not mentioned in the briefs, and were not referred to upon the argument. Berry's counsel in his very lengthy brief, under the heading "Points Relied Upon," urges (1) the insufficiency of the evidence to establish Berry's guilt, and (2) and (3) error in the admission of testimony of the witness Nimlos. No error is assigned by Berry as to the admission of this evidence. His assignment of errors makes no reference to it whatever. It is assigned as error, however, by Grieb and others, and will be considered hereafter.

Of the many errors assigned, but few are complained of. Those upon which stress is laid question, first, the sufficiency of the indictment; second, the sufficiency of the evidence to sustain the verdict; third, the overruling of an objection to a question put to the witness Foley; and, fourth, the admission of the testimony of the witness Nimlos.

[1] 1. As to the indictment: The demurrers to the indictment and the motions in arrest of judgment allege that "each and all of the counts of the indictment are not sufficient in law to constitute an offense or offenses against the United States." No defect was set out in either the demurrers or the motions in arrest, and no substantial criticism of the indictment has been made here. It charges the defendants below at great length and with much detail, in the first 18 counts, with having devised a scheme to defraud and obtain money by false pretenses—a scheme intended to be and actually begun by perjury, intended to be and actually carried on by falsehoods and false pretenses, and intended to result and actually resulting in great loss to many innocent persons—and for the purpose of executing the scheme depositing in and receiving from the mails letters, certificates, and the like. Count 19 charges in the usual language a conspiracy to commit the crimes and offenses set out in the first 18 counts and other violations of section 215. A reading of the indictment and the statutes upon which it is based leaves no doubt in our minds of its sufficiency. An examination of the cases in the Supreme Court and in this and other Circuit Courts of Appeals, under these statutes, will disclose that the questions now raised by plaintiffs in error have been many times decided against their contentions. No good purpose would be served by citing these cases, or setting out the various counts and demonstrating their entire sufficiency.

[2-4] 2. As to the sufficiency of the evidence: It ought not to be necessary to remind counsel for plaintiffs in error that this court cannot weigh the evidence. Assignment of error upon the ground of insufficiency can only present the question as to whether there is evidence in the record which, if believed by the jury, would sustain the verdict. Yet extensive argument is indulged in by counsel as to the weight which should be attached to the evidence. Berry's counsel expends much time in his brief in an attempt to show the unreliability of the chief witness for the government, but we cannot enter this field. We can go no further than to inquire whether there is substantial evidence in the record sufficient

to sustain the verdict. The weight of the evidence and the credibility of it are for the jury alone to decide. We can step in only when it appears that there is no substantial evidence to support the verdict. Such is not the case here. Each of the plaintiffs in error is shown to have been active in carrying out the fraudulent scheme. The parts played by them were not equally important. Some were much more active, and their activities extended much farther, than others. All of them took the witness stand, and under oath assured the jury that they had done nothing wrong intentionally, that they believed the scheme was sound and honest; but the jury, who heard the evidence and saw them attempt to explain their connection with it, did not believe them. This question was for the jury, and we cannot disturb their finding.

[5] 3. The testimony of the witness Foley: This is the subject of Grieb's fortieth assignment which is: "The court erred in receiving in evidence, over the objection and exception of this defendant, the statement of the witness Foley, who, testifying as to the conclusions reached by him from an examination made of the affairs of the Union Food Stores Company and the Waukegan Tea Company as attorney for the trustee in bankruptcy, testified, 'I had in mind when I made that statement the opinion formulated by me that the Waukegan Tea Company was bankrupt prior to the formation of the Union Food Stores Company, and that the Union Food Stores Company was formed in an attempt by the officers of the Waukegan Tea Company, by selling stock, to save the Waukegan Tea Company,' and the court erred in denying the motion made by this defendant to strike out the said testimony as incompetent."

The record shows that this witness was examined, then cross-examined, then examined redirectly, and again cross-examined, and again examined redirectly, and that the question objected to was asked by the government on the last redirect examination. The witness had testified to statements made to him by Grieb and Berry, and upon the second cross-examination the witness, in answer to questions put to him by plaintiffs in error, said: "I am quite sure that these things are not inferences of fact which I have drawn in making my theory of the case. I am quite sure that I have distinguished them from what I was told and from any theory of mine." He was then asked by the government's counsel: "Can you state anything further in regard to the theories that you had in mind when you answered that you did not confound the statements and the theories?" It was in response to this question that the answer sought to be stricken out was given. Counsel for plaintiffs in error had already asked the witness to distinguish between the statements he had testified to and any theories he had in mind in reference to the matter. Having been asked this question on recross-examination, it was not serious error to permit the witness to state what these theories were, which plaintiffs in error were seeking to confound with the witness' testimony as to facts. The trial judge in ruling upon the objection said: "You opened this subject by interrogating the witness as to whether or not he was confusing his theory of the case with the alleged stories given by the witness. Now let us see if you have confused the witness."

[6] 4. The testimony of Nimlos: This witness was trustee in bankruptcy of the concern, the disposal of whose stock was the object of the alleged fraudulent scheme. The indictment charged in setting forth the scheme that this stock "would be and was of little or no value." The nineteenth count alleged a continuing conspiracy from June 27, 1921, to October 12, 1922. Nimlos testified that he was appointed trustee in bankruptcy and took over the assets in October, 1922. The adjudication must have been some weeks before that time. Nimlos was asked what the assets amounted to. This was objected to on the sole ground that "what the condition of the company was in July would not be proved by its condition in October." The objection being overruled, the witness proceeded to answer. At this point the bill of exceptions recites:

"Whereupon, it appearing that witness was testifying from papers, counsel objected to the competency of the testimony, and the court stated: 'I presume he is testifying from the bankruptcy records.'

"Counsel: Then the bankruptcy records are objected to on the grounds that they are incompetent. Said objection being overruled, the counsel duly excepted that the testimony is incompetent and hearsay. Upon the objection being overruled, the defendant duly excepted, and the witness answered."

[7, 8] Two objections are pressed here:

(a) The evidence was too remote, and, as presumptions do not run backward, proof of the condition in October does not show the condition in July. While proof of the condition in October does not prove what it

was in July, the evidence objected to showed the condition of the company at the time of the bankruptcy, and this was so near to the time of the activities of the plaintiffs in error as to be some evidence of the condition at that time. It was not too remote, and it was during the continuance of the conspiracy as charged.

(b) Hearsay. As we gather from the briefs and arguments, the point made is that the government got in evidence facts appearing in the bankruptcy records; that these records are the unsworn statements of third parties, and therefore hearsay. In the first place, the rule against the admission of unsworn statements has many exceptions. Book entries, made in the regular course of business at the time by one whose duty it is to make them, are a familiar exception. For stronger reasons the solemn findings and recitals of fact in judicial or semijudicial proceedings should be held to be evidence of the facts so found and recited. But at most the witness was refreshing his recollection from the bankruptcy records. He was not asked to state the contents of any papers he had in his hands. He was asked to state a fact: "What did the assets amount to?" He answered this question, and was referring to papers, presumably bankruptcy records. On redirect examination he said: "I have had experience and knowledge in the appraisal of goods in connection with my business as trustee in bankruptcy, and I looked over this bankrupt estate and went around with the appraisers. I consider the appraisal fair."

There is no substantial error in the record, and the judgments are affirmed.