**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Frank Robert VERVILLE, Defendant-Appellant.**

**No. 15087.**

United States Court of Appeals Seventh Circuit.

Dec. 28, 1965.

Rehearing Denied Jan. 28, 1966.

---

Lee Feltman, New York City, for appellant.

Franklyn M. Gimbel, Asst. U. S. Atty., Milwaukee, Wis., James B. Brennan, U. S. Atty., William M. Coffey and Louis W. Staudenmaier, Jr., Asst. U. S. Attys., Milwaukee, Wis., for appellee.

Before DUFFY, KNOCH, and KILEY, Circuit Judges.

KILEY, Circuit Judge.

We think the district court erred in admission of bankruptcy records in the trial of this mail fraud case, and that defendant-Verville's conviction must be reversed and the case remanded.

The twenty-one count indictment was returned April 28, 1959, charging Verville in seventeen counts with use of the mails in a scheme to defraud,[1] and, in one count, charging Verville, James Bishop, and others with a conspiracy to unlawfully transport, receive and sell in interstate commerce property obtained by fraud.[2]

---

1. 18 U.S.C. §§ 1341–1342. James Bishop was also charged in fifteen counts, and other defendants in two counts, under these sections.

2. 18 U.S.C. §§ 2314–2315.

Verville entered a plea of not guilty when arraigned, but subsequently changed his plea to guilty on Count 1, testified for the Government, and, with James Bishop, was sentenced in August, 1960 to three years imprisonment. In September, 1960, Verville moved to withdraw his plea of guilty and to vacate the sentence on the ground that his guilty plea had been induced by "a deal" with the Assistant United States Attorney. The motion was denied by the district court. Verville appealed to this court, where the United States Attorney confessed error because of the "impression" that Verville had of a promise of a lesser sentence, which made his guilty plea nonvoluntary. This court in September, 1961, reversed Verville's conviction and remanded the cause with directions to allow his motions.

Subsequently Bishop's guilty plea was withdrawn by leave of court. Verville and Bishop were tried together beginning June 8, 1964, and were each convicted on all counts in which they were named in the indictment. Verville was sentenced to four years imprisonment on each of the seventeen counts of mail fraud, the sentences to run concurrently, and on Count 21, the conspiracy charge, was fined $5,000.00.[3] Verville alone has appealed.

■■ Verville argues that the Government failed to prove a *prima facie* case of his guilt on any of the counts. He claims, on the mail fraud counts, a failure to prove (1) misrepresentations to the suppliers of merchandise, and (2) intent to defraud at or prior to obtaining the merchandise on credit. His claim, on the conspiracy count, is failure to prove a conspiracy and that the goods transported and sold were those obtained by the mail fraud. On appeal from jury verdicts we must take the view of the

evidence, with reasonable inferences therefrom, most favorable to the Government. United States v. Sears, 332 F.2d 199, 200 (7th Cir. 1964). We hold that the district court did not err in submitting these counts to the jury.

The evidence of the acquisition by Verville and Bishop, under assumed names, of Scanlon's Radio and Music Shop, their mailing of post cards to suppliers soliciting catalogs and price lists of merchandise, the cards saying "Hello Again from Scanlon's" and "Here Since 1933," their manner of ordering, receiving, storing, transporting and disposing of goods received, and other evidence in this record justified reasonable inferences of misrepresentations in a scheme to defraud the suppliers.

■ There is no merit in Verville's contention that there was no evidence identifying the goods transported and sold as part of the goods which were sold to Scanlon's pursuant to the purchase orders sent by Bishop and Verville, and that the conspiracy count therefore should not have gone to the jury. The record does indicate that the identification testimony, as well as that of the value of the goods, is thin. However, the conspiracy count alleges the offense of receiving in interstate commerce goods which were obtained as a result of fraud. We think there is enough evidence of receipt of the goods by Bishop and Verville to justify submitting the conspiracy count to the jury. On retrial the district court should be careful to protect Verville in his right to have this issue kept from the jury unless sufficient *prima facie* evidence of all elements of the alleged crime on this issue is proven by the Government.

Over objection of Verville, the district court permitted the Government to introduce into evidence, under the conspiracy count, bankruptcy records consisting of thirty exhibits, petitions, documents and

3. Bishop was sentenced to a fine of $1,000.00 on Count 1, with sentence on the other fifteen counts suspended and probation granted. Of the other five defendants named in conspiracy Count 21, one had pled guilty and three had been convicted in the 1960 trial. After Ver-

ville's successful appeal in 1961, the convictions of the four convicted co-conspirators were vacated and the Government dismissed the indictment as to them. The indictment of the fifth co-defendant had previously been dismissed by the Government.

orders [4] in an involuntary proceeding by creditors, from various states, against Bishop under the name "James B. Kelly," d/b/a Scanlon's Radio and Music Shop. The material was read to the jury. We agree with Verville that the court's ruling was reversible error.

In Berry v. United States, 15 F.2d 634 (5th Cir. 1926), the Fifth Circuit reversed a conviction for mail fraud on the sole ground that the trial court committed reversible error in admitting into evidence a petition for a receiver in a bankruptcy proceeding against both defendants, which alleged that there was danger of bankrupts' assets on hand being "lost, destroyed, or otherwise disposed of." The court thought this allegation could be understood as "involving the charge" that there was that danger. A similar result was reached by the Eighth Circuit in Todd v. United States, 221 F. 205 (8th Cir. 1915), also a mail fraud case. There one of Todd's alleged victims, Dykes, testified that "we replevined the goods," and on cross-examination he said that he was not present when replevin was brought and did not know if the ground for replevin was that the goods were not sold to Todd. The Government then introduced, over objection, a reclamation petition signed by an attorney for Dykes' concern which alleged the facts in the Todd indictment as to the alleged fraudulent scheme and prayed for return of the property. The court's ruling alone, in admitting the petition, was held to be reversible error as it admitted self-serving "written hearsay of verbal hearsay" for the purpose, according to the trial judge, of explaining testimony which Dykes "never gave," and the petition was inadmissible as against Todd under any "principle or rule of law." 221 F. at 208.

We reverse on authority of Berry and Todd. The prejudice in Verville's case is more aggravated than in Berry, since not only does the bankruptcy petition for receiver admitted here, as there, allege the necessity of preventing loss, but the order appointing the receiver containing a finding of that necessity was also before the jury. To some extent the prejudice to Verville is also probably greater than in Todd and Berry, because the single bankruptcy document in those cases was charging the defendant, while here the many documents were charging Bishop, and the bankruptcy petitioners therefore were virtually witnesses against Verville, Bishop's alleged co-conspirator, who had no opportunity for cross-examination. The error here is further aggravated by admission of a list of the bankrupt's creditors with claims of almost $344,000.00, as well as many other documents containing allegations pertinent to the indictment.

The Government "disagrees and takes strong issue with the holding of Berry." No civil or criminal rules cited to us justify the district court's ruling admitting the bankruptcy records in this case against Verville.[5] The Government relies upon this court's decision in Tank v. United States, 8 F.2d 697 (7th Cir. 1925). That case has no application. There the indictment charged that stock, the object of the alleged mail fraud scheme, "would be and was of little or

---

**4.** Including a Creditors' Petition alleging concealment and removal to other states of goods shipped to him in Wisconsin, with intent to defraud creditors; a petition and order appointing a receiver, and to turn over the Scanlon premises; an adjudication of bankruptcy against "Kelly"; receiver's petition stating "Kelly" purchased on credit and removed and stored goods in Wisconsin and transported them to other states, "approximately one hundred thousand dollars" of the merchandise being stored in Michigan and various other amounts elsewhere;

amendment of bankruptcy pleadings to substitute for "Kelly" the name Bishop; authority to ancillary receiver to employ counsel and appraiser and sell property, and pertinent reports with respect thereto; and an order listing claims of about $344,000.00 of 975 creditors.

**5.** The Government urges that Rule 27, FED.R.CRIM.P., and Rule 44, FED.R. CIV.P., made the bankruptcy records competent evidence. However, these Rules only provide the method of proving an official record *if it is admissible.*

no value." The trustee in bankruptcy testifying on this question merely refreshed his recollection from the bankruptcy records in answering the question, "What did the assets amount to?" The witness was stating a fact, not the contents of bankruptcy records, none of which were admitted.

■ We shall not speculate on the claim of error in the district court's ruling which failed to limit evidence at this trial to disclosures by the Government at a pre-trial conference called for the purpose of excluding "fruit of the poisonous tree," i. e., evidence obtained as a result of his suppressed statements and incriminating testimony given at the trial of his co-defendants in 1960. There is a record now made of the testimony of this trial. According to the spirit of efficient procedure stated in Nardone v. United States, 308 U.S. 338, 341–342, 60 S.Ct. 266, 84 L.Ed. 307 (1939), a pretrial hearing on remand will easily enable Verville to challenge on-the-record testimony as "the 'fruit' of official illegality," Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). It will also provide "ample opportunity to the Government to convince the trial court that its proof had an independent origin," Nardone v. United States, 308 U.S. at 341, 60 S.Ct. at 268, and to the court to excise from trial any "poisoned fruit." The court can at the same time induce the Government to disclose and make the necessary showing with respect to any additional evidence it may intend to introduce. The court did not err in not excluding Government evidence merely because it was not disclosed at the pretrial conference—to so hold would too narrowly confine the conduct of criminal trials within mechanical rules, also condemned by Nardone, 308 U.S. at 342, 60 S.Ct. at 268. Error is committed, however, if evidence not so disclosed is proffered at trial and the court does not require a showing, before ruling, that this evidence is not "fruit of the poisonous tree."

Verville also argues that error was committed in three instructions given by the court, and in the court's refusal to give one offered by him, and that the charge to the jury, considered as a whole, was erroneous. Because of the remand we simply comment that the instructions on flight and exculpatory statements were correctly limited to Bishop by other instructions given, and that, contrary to Verville's argument, the instruction given concerning the elements of the offense which had to be proved by the Government did not assume anything. It was not error to refuse Verville's instruction, as the Government's burden of proof and the elements of the offense charged, see United States v. Shavin, 287 F.2d 647, 649–650, 90 A.L.R.2d 888 (7th Cir. 1961), had already been adequately charged.

■ The court did not err in denying Verville's motion to inspect the grand jury minutes on the ground of an earlier statement by the Assistant United States Attorney, in arguing against the motion to suppress statements made by Verville and a co-defendant, that without the statements the Government would have insufficient evidence to prosecute him. No authority is cited, and we know of none, for the claim of error. The facts do not reveal a "particularized need" which would outweigh the policy of secrecy, see United States v. Coduto, 284 F.2d 464, 468 (7th Cir. 1960), cert. denied, 365 U.S. 881, 81 S.Ct. 1027, 6 L.Ed. 2d 192 (1961).

Because we hold that the admission of the bankruptcy records was prejudicial error, we reverse and remand for further proceedings.