**Darl D. PARKER, Petitioner-Appellant,**

v.

**UNITED STATES of America,
Respondent-Appellee.**

Nos. 14126, 14768.

United States Court of Appeals
Seventh Circuit.

Dec. 3, 1965.

Rehearing Denied March 24, 1966,
(en banc).

Bernard J. Nussbaum, Chicago, Ill., Darl Dee Parker, Atlanta, Ga., for appellant.

Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., for appellee.

Before DUFFY, CASTLE, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Petitioner Darl D. Parker was convicted of bank robbery and an escape incidental thereto, 18 U.S.C. § 2113, upon guilty pleas entered on May 25, 1959. The questions before us have arisen through a belated, provisionally-docketed direct appeal from these convictions, and by an appeal from the denial without a hearing of a "Motion in the Nature of a Writ of Error Coram Nobis" addressed to the sentencing court.

Petitioner was originally confined in a Fort Wayne, Indiana, county jail under an indictment relating to the robbery of a Fort Wayne bank. Petitioner escaped this confinement but was recaptured in a gun battle on the same day. An indictment alleging the escape was subsequently returned.

With some intermittent difficulty occasioned by changes in retained and court-appointed counsel, petitioner entered a plea of not guilty to the bank robbery indictment, pleaded not guilty by reason of insanity to the escape indictment,[1] moved for dismissal of both indictments by reason of insanity and requested a judicial determination of his sanity. The district court appointed two psychiatrists who conducted an examination at petitioner's place of confinement. Based upon the psychiatric reports, the court found that he was competent to stand trial.

On the trial date, May 25, 1959, petitioner pleaded guilty to the charges in both indictments. He was sentenced to twenty and twenty-five years on the two counts contained in the bank robbery indictment, the sentences to be served concurrently, and to twenty-five years on the escape indictment, the latter sentence to be served consecutively.[2]

Since the date of his imprisonment, petitioner has proceeded unsuccessfully through: (1) a motion to vacate the sentences and an appeal from the denial thereof (1959–60) (see footnote 2), (2) a motion designed to provide him with a trial transcript wthout cost (1961), (3) a "Motion in the Nature of a Writ of Error Coram Nobis" (1962–63), (4) a motion for a reduction of sentence (1964), and finally, (5) a direct appeal from his convictions, provisionally docketed by this court when it appeared that petitioner may have been misinformed by counsel as to his right of appeal from a plea of guilty.[3]

Two of these efforts, (3) and (5), are now before us, in which petitioner presents two basic allegations of error. Initially, in his provisionally-docketed direct appeal, petitioner alleges that an electronic listening device was present in

---

1. The court entered a plea of not guilty.

2. The twenty year sentence was subsequently vacated, but this court affirmed the consecutive running of the twenty-five year sentences in United States v. Parker, 283 F.2d 862 (7th Cir. 1960).

3. Petitioner filed a notice of intention to appeal shortly after his sentencing, but no further action was taken until this court was made aware of the circumstances when petitioner's appeal from the denial of his "Motion in the Nature of a Writ of Error Coram Nobis" was filed.

the room at the county jail in which he conferred with counsel prior to his convictions and in which the psychiatric examinations were held. This "fact" itself, he contends, commands not only his release from custody but also dismissal of the indictments. Secondly, in his appeal from the denial of his error coram nobis motion, petitioner avers that his guilty plea to the bank robbery indictment was entered upon the representation by the prosecuting attorney that the sentencing judge would grant probation to his brother in a related matter. He then alleges a "doublecross," in that his brother was subsequently given a five year sentence. Petitioner contends that such event renders his guilty plea involuntary, requiring a reversal of the conviction, but that in any event the district court should have conducted a hearing on his charges.

## I.

■■ We have determined to dispose of the merits of the principal contention advanced in petitioner's direct appeal without questioning further the propriety of the appeal itself. As we have stated, this contention relates to the alleged presence of an eavesdropping device during certain of petitioner's pretrial conferences with counsel. To show that such consultations were intentionally overheard, petitioner directs attention to the following colloquy which occurred at his arraignment on the escape charge:

Mr. Moorehead (Parker's court-appointed counsel): Counsel for the defendant has advised that the examination conducted by the psychiatrists appointed by the Court were oral examinations, approximately 15 to 20 minutes in length, consisting merely of conversation with the defendant which conversation possibly was not a private conversation inasmuch as in the particular room in which the examination was conducted, and which also happens to be the particular room in which confer-

ences between the defendant and his counsel have been held, contains an electrical device readily visible in the ceiling thereof, which no doubt is possible of recording or registering or receiving the conversations between the parties.

The Court: Mr. Moorehead, permit the Court to interrupt to say at this point: I do not have words sufficient to condemn that practice insofar as it might be an interference with the right of the defendant and the right of counsel to confer with his client, and I shall promise you one thing, that arrangements will be made for private conferences with your client entirely apart from any microphone, whether it is turned on or turned off; that is assured you.

\* \* \* \* \* \*

Is a representative of the Sheriff's office here to speak? Are you the Sheriff, Sir?

A. Yes sir.

Will you come forward? Is the room in which this defendant is permitted to have conferences with his counsel equipped with a microphone?

A. Yes sir. It is what we call a speaker from the ceiling.

Is there no room where he can have counsel with his attorneys that is not so equipped?

A. There is one little place down next to the receiving room that they could give him down there. But we didn't feel it would do the physicians justice.

The Court is not talking about the doctor's examinations. He is talking about his right to private counsel with his attorneys. The Court is going to make sure he has it, if we have to bring him up to the Marshal's office, to have the conference without the benefit of a microphone

 **53**

in the room, even though it may be turned off.

A. There is one very small place.

The Court directs you, Sir, that at any conferences that counsel who have been appointed to serve this man, which this man is to have in the local jail, that they be held in a room where there is not a microphone present, even though turned off. The Court will say to you, Mr. Moorehead, we will preserve to you that right of conference with your client in private, and if it cannot be provided there, arrangements will be made to make sure it will be given you.

This language represents the only reference to an eavesdropping device in the entire record. No further questions were asked. No attempts were made, following the conjecture of petitioner's counsel, to ascertain whether the device referred to was in fact capable of recording conversations. Nor was there any attempt to establish that it had been so used. Further, no objections of any sort were taken. In short, petitioner would have this court hold that the mere possibility of the presence of a listening device in a room which was used for attorney-client conferences somehow influenced his guilty plea and that such possibility automatically requires a reversal of his conviction as well as a dismissal of the indictments. The bare statement of the contention demonstrates its weakness. There can be no question about the right to the effective assistance of counsel, or that this right includes the right of unfettered communication between attorney and client. But the circumstances outlined above do not even suggest such a denial. Speculation may not be substituted for proof.

## II.

On May 25, 1959, the day set for his trial, petitioner changed his pleas from not guilty to guilty. Three years later he executed a "Motion in the Nature of a Writ of Error Coram Nobis." In it petitioner claims that he pleaded guilty to the bank robbery indictment solely because of a promise by the prosecuting attorney that in return for doing so petitioner's brother, charged with aiding and abetting petitioner's jail break, would be placed on probation. In the accompanying affidavit, petitioner states that both his attorney and the trial judge were implicated in the promise. Petitioner then alleges that this promise was not kept, since his brother received a five year sentence shortly thereafter.

■ Petitioner's motion attacks only the sentence he is now serving, the twenty-five year sentence for violation of 18 U.S.C. § 2113(d) (assault in connection with bank robbery). His motion does not encompass the consecutive twenty-five year sentence for violation of 18 U.S.C. § 2113(e) (kidnapping in connection with escape). Despite petitioner's initial contention that section 2255 of the Judicial Code, 28 U.S.C. § 2255, is not available to him by reason of Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959), we think that even though his release from confinement would not be affected by the vacation of the first sentence, the proper method of attacking that sentence is by a section 2255 motion rather than by error coram nobis. We shall therefore consider the motion as one made under that section. Thomas v. United States, 106 U.S.App.D.C. 234, 271 F.2d 500 (1959).

■ In denying the motion without a hearing, the district court stated that "petitioner was questioned thoroughly by the Court about any coercion or duress, promises or inducements that may have been exerted upon him. This was done before the plea of Guilty was accepted. In addition the written petition and certificate of counsel both signed in open court, state that the plea was made understandingly and voluntarily." The district court also referred to the fact that petitioner furnished no corroboration for his assertions, and to the three year lapse of time between the entry of

the guilty plea and the filing of the present motion.[4]

Petitioner's allegations are very similar, if not "tailored," to the facts in Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). There the Supreme Court held that a hearing was required despite the improbability of the assertions made by the petitioner. The case before us, however, is distinguishable.

■ Here petitioner was asked on two occasions before sentencing whether any promises had been made to him. His response was an unequivocal denial. At the same time petitioner executed and filed a written petition denominated, "Petition to enter plea of guilty." Therein petitioner declared that "no officer or agent of any branch of government * * * nor any other person, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence, or probation, or any form of leniency, if I would plead 'Guilty'." He continued, "I know the court will not accept a plea of 'Guilty' from anyone who claims to be innocent, and, with that in mind and because I make no claim of innocence, I wish to plead 'Guilty'. * * * I offer my plea of 'Guilty' freely and voluntarily and of my own accord." The petition was accompanied by a "Certificate" signed by petitioner's chosen counsel, which stated, "[t]o the best of my knowledge and belief each statement set forth in the foregoing petition is in all respects accurate and true. * * * In my opinion the plea of 'Guilty' as offered by defendant * * * is voluntarily and understandingly made."

Petitioner now asserts that all was a sham; that he had in fact been promised leniency for his brother in return for his plea of guilty to the bank robbery indictment;[5] and that the promise was known not only to his attorney and government counsel, but even to the judge. The extreme incredibility of this charge when considered in connection with the court proceedings is sufficient in our opinion to distinguish the Machibroda decision and to warrant the summary denial of the motion.

Learned Hand once observed in a similar case: "Justice is not a game."[6] Here, petitioner bases his motion to vacate his sentence upon allegations which fly in the face of his statements made in open court, without coercion, and confirmed by his counsel. He avers that these statements were false. To compound the fraud, he asserts that the judge who asked the questions that promoted the allegedly false answers was currently aware of their falsity.

The Supreme Court in Machibroda said, "There will always be marginal cases, and this case is not far from the line."[7] We are of the opinion that the instant case is beyond the line where an evidentiary hearing is required to decide the motion.

The order of dismissal is affirmed.

We thank court-appointed counsel, Messrs. Bernard J. Nussbaum and William Levinson of the Chicago Bar, for the service they have rendered in this appeal. The excellence of their brief and oral argument deserves our commendation.

4. Although a delay in filing a section 2255 motion is not a controlling element, we think it may merit some consideration. Petitioner had knowledge of all the alleged facts in 1959, yet he waited until 1962 to bring them to the attention of the sentencing court, and only then after having filed several other petitions alleging totally different grounds for post-conviction relief. During that period the former United States Attorney, Kenneth Raub, died. Thus, because of the delay in filing the motion the court is now prevented from hearing the testimony of a key witness to the alleged transaction.

5. This crime carries a maximum sentence of twenty-five years. Petitioner also pleaded guilty to the kidnapping-escape charge, a crime carrying a maximum penalty of death.

6. United States v. Paglia, 190 F.2d 445, 447 (2d Cir. 1951).

7. 368 U.S. 487, 496, 82 S.Ct. 510.