John Robert **HARRELL**, Petitioner-Appellant,

v.

**UNITED STATES** of America, Respondent-Appellee.

No. 15739.

United States Court of Appeals Seventh Circuit.

Jan. 5, 1967.

Rehearing Denied Feb. 3, 1967, en banc.

10. Dicey, Conflict of Laws 951 (7th ed. Morris 1958).

gust 1961 unlawfully concealed and protected a deserter from the United States Marine Corps, in count II that he refused to give up said deserter, and in counts III and IV that he conspired in relation to the acts referred to in the other counts, while count V charged that he unlawfully resisted by means of deadly and dangerous weapons an agent of the FBI in the performance of his duties. The information, in one count, charged that he incurred a bail forfeiture on November 12, 1963 and willfully failed to surrender himself, in violation of 18 U. S.C. § 3146.

The record shows that at a court hearing when petitioner's plea of guilty was accepted by the court, the judge advised him of his rights and inquired as to whether any promises had been made to induce him to change his plea from not guilty to guilty; whereupon petitioner indicated that none had been made. A similar inquiry and a like response followed as to his plea of guilty to the information.

On March 15, 1966, petitioner filed in the district court a lengthy document which he characterized as a "petition (in the nature of) error of coram nobis", which was considered by the court as a motion under 28 U.S.C. § 2255. It was accompanied by various affidavits and was disposed of on the same day by the district court by a memorandum and order fully meeting petitioner's charges and denying the petition. No review of that order is now sought by petitioner.

John J. Cleary, Michael J. McArdle, Chicago, Ill., for appellant.

Carl W. Feickert, U. S. Atty., Joel A. Kunin, Asst. U. S. Atty., East St. Louis, Ill., for appellee.

Before SCHNACKENBERG, KNOCH and CUMMINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

John Robert Harrell, petitioner, has appealed from an order of the district court denying his motion of April 27, 1966, in forma pauperis, filed pursuant to 28 U.S.C.A. § 2255.[1]

It appears that petitioner on October 13, 1964, with the assistance of retained counsel, withdrew a plea of not guilty and entered a plea of guilty to an indictment and an information. The indictment charged in count I that Harrell in Au-

As hereinbefore stated, on April 27, 1966, petitioner filed what was actually a second motion under § 2255 "on the ground that his plea of guilty was unfairly obtained through use of coercion, intimidation, mistake, misapprehension, fear, inadvertence, or ignorance of his rights or understanding of the consequences of the plea; and, promises made by the prosecution that were not fulfilled or unfillable." His own affidavit in support thereof set forth that he was told by his own attorney that the United

---

1. Offered to support the motion were affidavits of petitioner, his mother and his wife.

States attorney had said that, if Harrell would plead guilty "to harboring a deserter and refusing to deliver him on demand, that he [the U. S. Attorney] will drop the other four (4) counts, and grant three (3) years probation, * * * and drop the charges pending against [his] son. * * * " Because the second motion involved a subject matter disposed of by the March 15, 1966 order, the court refused to appoint counsel for petitioner to represent him on the second motion. As above indicated, the court denied that motion. This appeal followed.

■ The key question before the court below, when considering Harrell's motions under § 2255, was whether the motions, files and records in the case conclusively showed that his plea of guilty was knowingly and voluntarily entered. As a result of our examination of those files and records, we hold that Harrell's contention that false promises deprived his plea of guilty of its voluntary character is not supported by the record. Actually it appears that petitioner's contention that his plea of guilty was induced by promises to his attorney by the government attorney is contradicted by the recitals in the record as to what occurred at that stage of the proceeding.

Thus, on October 13, 1964, when he was arraigned, petitioner was fully advised of his rights and of the maximum sentences which the court could impose. In answer to a question, he stated that his change of plea was made of his own free will and accord and that "there is no need for this Court to try a case already tried before. Therefore, I did change my plea because of that."

The court accepted his plea of guilty and found him guilty on all five counts of the indictment and on the one count of the information after petitioner stated that he was familiar with the charges against him and that no "promises" of any kind by any person at any time made him change his plea from not guilty to guilty; that he was not subjected to any threats, acts of coercion or acts of intimidation, which caused him to change his plea from not guilty to guilty.

On November 4, 1964, when defendant was sentenced he had appeared with his retained counsel, a respected member of the bar. On that occasion neither counsel nor defendant himself informed the court of any alleged promises of leniency. On that day the court sentenced petitioner to the maximum period of confinement on each count of the indictment, and the information, the sentences to run concurrently.

It is significant that, after sentencing of defendant, an affidavit was filed in the district court on December 17, 1964, wherein defendant stated:

"* * * Furthermore, in view of what had happened to the others involved, I assumed that I would get probation. But most of all, I wanted to protect my son, Tod, who is now a fine young man of seventeen and the mainstay of his mother and grandmother. At the last minute, Attorney Rice told me the government had backed out on their deal so far as I was concerned but wouldn't prosecute Tod, if I plead guilty".

■ We are impressed by the government's contention that defendant's plea was not involuntary because he had wrongly anticipated the length of the sentence which the court proceeded to impose upon him and was disappointed in not receiving probation.

■ We do not find that the action of the district court in this case does violence to the holding in Machibroda v. United States, 368 U.S. 487, 489, 82 S. Ct. 510, 7 L.Ed.2d 473 (1962). Thus in United States v. Farrar, 7 Cir., 346 F.2d 375 (1965), upon facts of record far more favorable to a prisoner than those appearing of record in this case, we at 376, relied upon Machibroda and upheld the action of a district court in denying, without a hearing, a petitioner's motion under § 2255. Numerous cases from other circuits are in conformity with the action which we there took. The authorities sustain the action of the district

court in the case at bar and its order, from which petitioner has now appealed, is affirmed.

Mr. John J. Cleary, court-appointed counsel, has served diligently on behalf of defendant in this case. We express our appreciation for his services.

Order affirmed.

CUMMINGS, Circuit Judge (dissenting).

In my opinion, the District Court's denial of petitioner's April 1966 motion under Section 2255 of the Judicial Code (28 USC § 2255) was improper. Under that Section, a hearing is required "unless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief" (italics supplied).

Machibroda v. United States, 368 U.S. 487, 496, 82 S.Ct. 510, the leading case, admonishes that a hearing is required even though a petitioner's assertions are "improbable", if they are not clearly "incredible". Here the petitioner's April 1966 motion, supported by his, his wife's and his mother's affidavits, states that he pleaded guilty to these charges in December 1964 because on October 5, 1964, his defense counsel, Robert Rice, advised petitioner that United States Attorney Feickert had agreed to drop the charges pending against petitioner's 17 year-old son Tod.[1] According to the affidavits, Mr. Rice so informed petitioner's wife and mother on October 7. Petitioner's affidavit also asserts that on October 9, 1964, in the presence of his cell-mate, Assistant United States Attorney Williams assured petitioner that the Govern-

ment's promise would be kept. Finally, the affidavit claims that in December 1964 Mr. Rice told petitioner's Danville, Illinois, attorney, John Unger, that the Government had kept its promise of dropping the charges against petitioner's son.

In denying petitioner's Section 2255 motion, the District Court stated that "these same questions" had been previously raised in a November 1965 motion denied on March 15, 1966.[2] But an examination of the November motion and supporting affidavit shows that they were devoid of any allegation concerning petitioner's son Tod. At the time that petitioner received his 10-year maximum sentence, the charges were still pending against Tod. We were advised at the oral argument that "the indictment against petitioner's son was dismissed on December 29, 1964."

At the time he was sentenced, the District Court interrogated petitioner as to whether any promises had been made to him, and petitioner then denied the existence of any promises influencing his plea.[3] Such a ritualistic pre-sentencing colloquy is "not conclusive" on the issue of voluntariness. Trotter v. United States, 359 F.2d 419, 420 (2nd Cir. 1966); Scott v. United States, 349 F. 2d 641, 643 (6th Cir. 1965). If petitioner had acknowledged the "promise" of leniency toward his son in return for petitioner's guilty plea, that plea would not have been accepted and petitioner would be uncertain whether the prosecution against his son would be dropped. It is only really where such promises are not kept that a defendant can be ex-

---

1. It is unnecessary to consider petitioner's claim that the Government had promised to drop four counts of the indictment and "grant three (3) years probation", for petitioner's December 17, 1964, affidavit offered to support his motion to vacate his plea of guilty or to reduce his sentence or place him on probation discloses that before he pleaded guilty, Mr. Rice advised him that "the government had backed out on their deal so far as * * * [petitioner] was concerned" but would not prosecute Tod if petitioner pled guilty.

2. In his March 1966 affidavit, petitioner concedes that the November 1965 motion was deficient and should have been denied.

3. Neither the Assistant United States Attorney nor defense counsel discussed the subject of promises before the trial court. Cf. Lynott v. United States, 360 F.2d 586, 587 (3rd Cir. 1966); Parker v. United States, 358 F.2d 50, 53 (7th Cir. 1965).

pected to tell the truth about any "deal" with the prosecutor. Courts should not penalize defendants who have denied promises during their in-court statements if they can later show why they made such denials. In such instances, the Government is equally at fault. United States v. Verville, 355 F.2d 527, 529 (7th Cir. 1966).

Petitioner's assertion that he pleaded guilty to secure leniency toward his son has not been denied by any affidavit of the Government. This subject is not even discussed in the Government's brief. Therefore, the present state of the record does not "conclusively show that the petitioner is entitled to no relief" (28 U.S.C. § 2255), so that a hearing is clearly required. Trotter v. United States, 359 F.2d 419, 420 (2nd Cir. 1966). At such a hearing, petitioner should be present because his credibility would have to be determined. United States v. Hayman, 342 U.S. 205, 220, 72 S.Ct. 263, 96 L.Ed. 232. He could call himself, his wife, his mother, his 1964 cellmate, and Attorneys Rice and Unger as witnesses on his behalf. The Government would presumably call as witnesses the United States Attorney and Assistant United States Attorney, who could then be cross-examined by petitioner. A similar procedure was employed on reversal in Trotter v. United States, 255 F.Supp. 55 (D.Conn.1966); see also Berry v. United States, 338 F.2d 605 (7th Cir. 1964) certiorari denied, 380 U.S. 959, 85 S.Ct. 1099, 13 L.Ed.2d 975; Luse v. United States, 326 F.2d 338 (10th Cir. 1964).

The particular circumstances before us show that a hearing is even more necessary than in Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510. There relief was accorded although the Government had filed an affidavit contradicting petitioner's allegations; the Government is surely no better off where, as here, it has filed no counteraffidavit. This petition is not vague, conclusory, or general; instead it quite specifically sets out the concrete facts, such as time, place and participants. Factual, uncontrovert-

ed petitions justify hearings under Section 2255. Scott v. United States, 349 F.2d 641 (6th Cir. 1965); Burleson v. United States, 340 F.2d 387 (8th Cir. 1965); cf. Legg v. United States, 350 F.2d 945 (6th Cir. 1965). As in the Machibroda case, the present petition is sufficiently "detailed and specific" (368 U.S. at p. 487, 82 S.Ct. 510).

In Machibroda and here, the petitioners pleaded guilty, so that there was no opportunity for direct appellate review. Sanders v. United States, 373 U.S. 1, 22, 83 S.Ct. 1068, 10 L.Ed.2d 148 observes that "In such a case it is imperative that a fair opportunity for collateral relief be afforded" through a Section 2255 hearing.

In the Machibroda case, two and one-half years had elapsed between the sentencing and the petition. Just a month after he was sentenced, Harrell first alleged that not prosecuting his son was the quid pro quo for his guilty plea. Therefore, this case is devoid of the tardiness that prompted Mr. Justice Clark's dissent in Machibroda (368 U.S. at pp. 499–500, 82 S.Ct. 510). See also Parker v. United States, 358 F.2d 50, 53–54 and note 4 (7th Cir. 1966).

The Machibroda opinion observes that "no real light" can be cast by the files and record upon factual issues relating to purported occurrences outside the courtroom (368 U.S. at pp. 494–495, 82 S.Ct. 510). As in that case, the conversations upon which Harrell relies occurred outside the courtroom.

In Machibroda, the petitioner's story could only be corroborated by the United States Attorney. Here the petitioner's wife and mother have filed affidavits supporting his affidavit. According to these affidavits, Harrell's cellmate and Attorneys Unger and Rice could also corroborate his story.

From the foregoing analysis of this record, it is clear that a Section 2255 hearing was required even more than in Machibroda. On similar or weaker facts, hearings are routinely accorded to prisoners. Sanders v. United States, 373

U.S. 1, 83 S.Ct. 1068; Scott v. United States, 349 F.2d 641 (6th Cir. 1965); Burleson v. United States, 340 F.2d 387 (8th Cir. 1965); Berry v. United States, 338 F.2d 605 (7th Cir. 1964) certiorari denied, 380 U.S. 959, 85 S.Ct. 1099; Desmond v. United States, 333 F.2d 378 (1st Cir. 1964); Romero v. United States, 327 F.2d 711 (5th Cir. 1964); Luse v. United States, 326 F.2d 338 (10th Cir. 1964); Dillon v. United States, 307 F.2d 445 (9th Cir. 1962); Watson v. United States, 104 U.S.App.D.C. 321, 262 F.2d 33 (1958). Although the Federal courts are too busy "to be used as a form of occupational therapy for those in penitentiaries" (Wright, The Federal Courts, 52 ABAJ 742, 747 (1966)), nevertheless, petitioner was entitled to a hearing under these precedents.[4]

In affirming, the majority relies only on United States v. Farrar, 346 F.2d 375, 376 (7th Cir. 1965). There we concluded that Farrar had voluntarily pleaded guilty because his motion for reduction of sentence stated:

> "I told him [Farrar's lawyer] I wanted to plead guilty and get the whole repulsive business of counterfeiting over. I wanted a clean start. I also volunteered to be a witness for the government."

There was no claim in *Farrar* that his guilty plea was induced by any promise. Furthermore, to protect his son, Harrell had a good reason at the time of sentencing to deny that any promise had been made to him.

Petitioner also asserts that under the particular facts of this case, it was error for the District Court to fail to appoint counsel. Because the District Court concluded that the Section 2255 motion should be denied, the request for the appointment of counsel *in forma pauperis* was denied. In my view, the Section

2255 motion should have been granted, so that the District Court's reason for denying appointment of counsel is inapplicable. It is also my view that counsel should have been appointed to represent Harrell below on his § 2255 motion.

In this Circuit, it is settled that appointment of counsel in § 2255 proceedings is ordinarily "a matter for the sound discretion of the district court" (Mitchell v. United States, 359 F.2d 833, 835 (7th Cir. 1966)). Such appointments are favored by the Supreme Court. Sanders v. United States, 373 U.S. 1, 21, 83 S.Ct. 1068; see Smith v. Bennett, 365 U.S. 708, 709, 81 S.Ct. 895, 6 L.Ed. 2d 39. In Ellis v. United States, 313 F. 2d 848, 851 (7th Cir. 1963), we held that a petitioner in a § 2255 proceeding has no Sixth Amendment right to counsel, but there we did not hesitate to suggest that the District Court appoint counsel even though the issues were no more complex than here.[5] Petitioner's brief in this Court states that his December 8, 1964, affidavit in support of his motion to withdraw his guilty plea or reduce his sentence or place him on probation raises questions concerning his "mental stability" and "mental soundness". The tenor of his November 1965 affidavit is also confused. In a case involving the Section 2255 motion of "an emotionally unstable individual * * * without psychosis—not mentally ill", we held that it was reversible error to refuse an *in forma pauperis* request for the appointment of counsel. Milani v. United States, 319 F.2d 441, 443 (7th Cir. 1963). Under *Milani*, counsel should have been appointed here.

In addition to petitioner's emotional state, other facets of the case show why appointment of counsel is mandatory. As noted, petitioner would presumably be offering the testimony of six witnesses,

---

4. If a hearing had been granted by the District Court, this would have obviated an appeal on the issue.

5. Recent cases where counsel have been appointed by District Courts include White v. United States, 367 F.2d 788, 789 (8th Cir. 1966); Berry v. United

States, 338 F.2d 605, 606 (7th Cir. 1964) certiorari denied, 380 U.S. 959, 83 S.Ct. 1099; Luse v. United States, 326 F.2d 338 (10th Cir. 1964); Henderson v. United States, 231 F.Supp. 177, 178 (N.D. Cal.1964); Taylor v. United States, 332 F.2d 918, 919 (8th Cir. 1964).

some of whom would have to be located and subpoenaed. He would be cross-examining at least two others. He in turn would almost certainly be interrogated by the Government. Thus, as in Dillon v. United States, 307 F.2d 445, 447 (9th Cir. 1962), "a fair and meaningful hearing cannot be had without the aid of counsel. Compliance with the due process clause of the Fifth Amendment then requires that counsel be appointed." Green v. United States, 158 F.Supp. 804, 808 (D.Mass.1958) (opinion by Wyzanski, J.), affirmed, 256 F.2d 483 (1st Cir. 1958), certiorari denied, 358 U.S. 854, 79 S.Ct. 83, 3 L.Ed.2d 87 also recognizes that where, as here, there are issues of fact, an indigent may have, by virtue of the due process clause of the Fifth Amendment, a right to have counsel appointed for him in a § 2255 case.[6] Even if appointment of counsel is not required here by the Constitution, it would be "highly desirable" and therefore the request should be granted. United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 715 (2nd Cir. 1960) (habeas corpus); United States v. Paglia, 190 F.2d 445, 448 (2nd Cir. 1951) (L. Hand, J.); Desmond v. United States, 333 F.2d 378, 382 (1st Cir. 1964). Surely the unaided prisoner will ordinarily not have sufficient ability to present his case in an orderly manner, eliciting the salient facts to support his side, and not unnecessarily consuming court time. See Gideon v. Wainwright, 372 U.S. 335, 344–345, 83 S.Ct. 792, 9 L.Ed.2d 799.

The Judicial Conference's Committee on Habeas Corpus favors the appointment of counsel to assist Federal prisoners in preparing § 2255 petitions. Thus it reported (33 FRD 367, 385):

> "We think it would promote orderly procedure if the legislation [the Criminal Justice Act, 18 USC § 3006A] also provided appropriate legal assistance for inmates of Federal penal institutions in the preparation of their

§ 2255 petitions. The effect of this would not be to increase the number of such proceedings, but to enable judges to determine more readily which petitions merit hearings and which do not. Under the present practice, frequently the judge feels constrained to order a hearing, fearing that there is no other way to ascertain the nature and merits of the case."

This recommendation is currently under advisement.

This is not to say that counsel must always be appointed for indigent prisoners in § 2255 cases. The courts are of course empowered to deny patently frivolous § 2255 claims without appointing counsel (Note, "Right to Counsel on Federal Collateral Attack Proceedings: Section 2255", 30 Univ. of Chi.L.Rev. 583, 596 (1963)). If this were such a case, Harrell's request for the appointment of counsel should have been denied.

process or equal protection requires appointment of counsel where a prisoner has set forth adequate factual allegations stating a *prima facie* case for relief.

---

6. In People v. Shipman, 62 Cal.2d 226, 41 Cal.Rptr. 1, 397 P.2d 993, 996–997 (1965), Chief Justice Traynor observed that in comparable State proceedings, due