**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Kirby JACKSON, Defendant-Appellant.**

**No. 15867.**

United States Court of Appeals
Seventh Circuit.

Feb. 15, 1968.

---

Cecil A. Partee, William H. Hall, Chicago, Ill., for appellant.

Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., for appellee.

Before SCHNACKENBERG, KILEY and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

John Kirby Jackson, defendant, has appealed from a judgment of the district court entered August 5, 1966, convicting him of a violation of 18 U.S.C. § 2421 [known as the White Slave Traffic Act], as charged in an indictment, under which he was sentenced to three years in prison.

It appears from the brief of defendant's counsel filed in this court and also by the record of the district court that the case came on for trial on June 29, 1966 and a jury was in the process of being impaneled, whereupon there was a conference held between the presiding judge, Mr. Moellering, counsel for the government, and Charles Locker and Ralph Schelly, counsel for defendant. Thereafter, Mr. Locker made a motion requesting leave of court to withdraw defendant's plea of not guilty "and enter a plea of guilty to the indictment and the matters charged." The court asked defendant if he had heard Locker's statement and if this was his desire, to which defendant replied "Yes, it is." The following colloquy then occurred between the court and defendant:

Court: Before I accept your plea, I want to be sure you understand your constitutional rights in this matter. You know you have a right to a trial by a jury?

Defendant: Yes, I understand.

Court: And you have a right to be confronted with the witnesses against you and cross-examine them or have them cross-examined by your attorney?

Defendant: Yes.

Court: You have a right to testify or not, as you see fit; you cannot be compelled to give evidence against yourself, and if you fail to testify that fact cannot be held against you or considered as any evidence of your guilt. Do you understand that?

Defendant: Yes, I understand.

Court: Do you understand the charge against you here?

Defendant: Transporting—

Court: Well, you are charged in the indictment, on or about the 1st

day of September, 1964, that you, John Kirby Jackson did knowingly transport in interstate commerce from Chicago, State of Illinois, to Gary, State of Indiana, in the Northern District of Indiana, two girls, Barbara Ann Dale and Margaret Bracey for the purposes of prostitution, debauchery and other immoral purposes in violation of the U. S. Code. Do you understand the charge?

Defendant: I understand the charge.

Court: Do you know the penalty involved?

Defendant: No, I don't.

Court: The penalty is a maximum of five years imprisonment and a maximum of $5,000 fine, either or both. Do you understand?

Defendant: Yes.

Court: Have any promises been made to you in order to induce you to change your plea?

Defendant: Well, no—yes and no.

Court: What do you mean "yes and no"?

Defendant: Well, I did bring them over, I can't deny that—

Court: No, what I am asking now is, have any promises been made to you?

Defendant: If I tell the truth, that I did bring them over, which I did, it might be easier with me—to tell the truth, and I did bring them over. And if I did not lie about it—and I did bring them.

Court: Have you been made any promise of leniency?

Defendant: That I may be let off easy—if I tell the truth, it is much easier and to tell the truth.

Court: I want to know, Mr. Jackson —I have discussed this matter with your attorneys and I have made them no promises.

Defendant: He didn't tell me you made any promises.

Court: Whether or not you get probation will depend on a lot of things which I do not yet know; but I am not making you any promises, nor have I made any promises.

Defendant: No, he did not make anything like that at all.

Court: No threats have been made against you in order to induce you to change your plea?

Defendant: No, no threat.

Court: Do I understand this plea of guilty is made voluntarily and understandingly by you?

Defendant: Yes, I talked it over back home with my wife and other friends and explained it to them, you know; and so that is that.

Court: By this plea are you telling me you did transport these girls across the State line?

Defendant: I did, and if they are here, it is just they are going to say I did, and it is two words against mine. So there is no use denying it.

Court: Let the record show the defendant enters a plea of guilty at this time and withdraws his plea of not guilty.

The Court now finds you guilty upon your plea. This matter will be referred to the probation officer, Mr. Jackson, for a presentence investigation report and after I have that report you will be brought back for disposition of your case. In the meantime, you will be released on the bond that has already been posted.

On August 5, 1966, at a hearing on his application for probation, in the presence of defendant as well as attorney Locker and government counsel, the court stated that he had read the probation report, which he said was very thorough, that he had considered defendant's introduction to a life of prostitution of two girls who until then were certainly not prostitutes, and that he was not going to grant probation, which he then denied.

Thereupon in the presence of government counsel, attorney Locker said:

"* * * It was my understanding at the pretrial conference * * *

that this court would consider probation * * * I was shocked this morning when the United States attorney stepped forward and recommended a severe penalty, in light of the fact that Mr. Moellering said he would not object to probation, I am shocked on the court's finding, in the light of the fact that this man's background does qualify him, and the court stated to me that if there was nothing in the probation report, that probation probably would be granted."

The court said:

"Counsel, I have never found a man guilty of contempt yet, but I will tell you very sincerely that you are on the verge of contempt. I never made any such promise. I said I would consider probation, as I do in every case, but I would make no promise whatsoever. This court never has and never intends to make a deal with anybody charged with a criminal offense. * * * "

The court made it clear that he had never made a promise that any defendant would be placed on probation before he had seen the probation report. The court however did fix an appeal bond at $2500.

In this court defense counsel seems to argue that a plea of guilty was entered by defendant pursuant to some understanding with, or approval of, the district court, and that the alleged understanding included the release of defendant on probation. However, nothing in this record indicates that the court at any time said or did anything to support this contention. While there might have been discussions between the prosecuting attorney and defense counsel preceding the appearance of defendant before the court and the entry of his plea of guilty, there is not the slightest basis for an inference that the court was responsible for what, if anything, was agreed to in such discussions. The court's neutral position required him to perform the judicial functions required of him in connection with this case. It did not encompass the procurement of pleas of guilty from defendants whose cases were before the court for trial. Quite obviously, if agreements were made for which the court has no responsibility, it follows that the judge remained unfettered in the performance of his duty in receiving a plea of guilty and administering justice based thereon. Any agreements between a prosecutor and defense counsel for a recommendation of leniency by the prosecutor, in return for a plea of guilty offered by defense counsel for his client, is not binding upon a judge, who is no party thereto. Otherwise the court would no longer be presiding impartially and performing in full his function to decide the questions arising in the case upon the facts properly established to his satisfaction, under the law as the judge knows it, but would be placed in a hypocritical situation of doing the bidding of the attorneys before him whenever they were able to agree among themselves on the disposition of a criminal case. The administration of criminal justice is a matter of public judicial determination rather than the result of private negotiation. The judge in the case at bar performed the function which was his.

Quite properly the judge refrained from committing himself in advance on what disposition he would make of the case if a plea of guilty were entered. The judge specifically told the defendant that he had discussed the matter with defendant's attorneys and that he had made no promises. Obviously this was corroborated by the defendant himself because he replied to the court: "He did not tell me you made any promises". Furthermore the court, before the plea of not guilty was withdrawn, specifically told defendant that the question of whether he would get probation would depend on things which the court did not then know and he was not making any promises, to which defendant said to the court that his attorney "did not make anything like that at all".

For the reasons hereinbefore set forth, the judgment from which this appeal was taken is affirmed.

Judgment affirmed.

SWYGERT, Circuit Judge (concurring).

I believe that no hearing was required relating to the request of the defendant's counsel to withdraw the defendant's plea of guilty after he had been denied probation and had received a prison sentence.[1]

Whatever the defendant's attorney may have represented to the defendant following a conference in the judge's chambers regarding his chances of probation, the defendant was put on notice immediately thereafter by the judge in the courtroom that whether the defendant would be granted probation depended "on a lot of things which I [the judge] do not yet know; but I am not making you [the defendant] any promises, nor have I made any promises." Thus any reliance that the defendant placed on what his lawyer may have told him pertaining to promises of leniency was dispelled by the subsequent discussion in the courtroom.

When the record is analyzed, even considering the gratuitous copies of the alleged affidavits of the defendant and his counsel (made a part of the brief filed by the defendant, but not filed either in the district court or in this court), there is no claim that either the district judge or the United States Attorney made an unqualified promise to grant probation. Moreover, the defendant at all times indicated both that no promises of any kind had been made to him directly and that he was never informed of any such promises by his attorney. The most that can be gleaned is that the judge indicated that he would consider probation if the background facts concerning the defendant were proved on investigation to be as represented by defense counsel at the conference in chambers, and that the United States Attorney stated he would have no objection to probation for the defendant. These representations are a far cry from a promise that probation will be granted which is made as an inducement for a plea of guilty.

Although the defendant's state of mind at the time he entered his guilty plea is of utmost importance, speculation and conjecture is necessary to conclude that the defendant changed his plea to guilty because of some mistake or misapprehension. There is no basis for viewing the in-court colloquy between the judge and the defendant as a mere ceremonial exercise designed to mask a "negotiated plea." Rather, I believe the record demonstrates that the defendant and his lawyer were aware that he was taking a chance by changing his plea in the hope that he might receive probation. But changing a plea under such circumstances cannot later be converted into an action premised on mistake when the hope of leniency is frustrated by the imposition of a stiff penalty.

I agree with Judge KILEY's views about the desirability of full disclosure on the record of any understanding between Government counsel and a defendant or his attorney in respect to a plea of guilty, save for two caveats. First, I think the term "plea bargaining" is unfortunate conveying, I fear, invidious overtones to both the legal profession and the public generally. Second, I believe that a trial judge should stand aloof as much as possible from any "negotiating" between Government counsel and a defendant or his attorney.

KILEY, Circuit Judge (dissenting).

I dissent.

The principal issue in this case is whether Jackson was entitled to a hearing upon his request to withdraw his plea of guilty. Jackson was entitled to

[1] It is not without significance that this request did not follow the recommendation of a "severe penalty" by the assistant United States Attorney, but came only after the sentence was pronounced.

such a hearing unless at the time his attorney sought to withdraw Jackson's plea of guilty the record of the case conclusively showed that the guilty plea was made intelligently and voluntarily without any belief that he had been promised leniency.[1] It is not enough that it appear "improbable" that the plea was made involuntarily or unintelligently since Jackson was entitled to a hearing unless a claim of involuntariness would have been "incredible." See 8 MOORE'S FEDERAL PRACTICE ¶ 32.07 [4]; Scott v. United States, (E.D.Ky.) 190 F. Supp. 470, aff'd 292 F.2d 49, cert. denied, (1961) 368 U.S. 879, 82 S.Ct. 128, 7 L.Ed.2d 79; Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473; United States v. Mainer, 383 F.2d 444 (3rd Cir. 1967).

A determination of whether Jackson's guilty plea was voluntary and intelligent must by definition depend upon the court's view of Jackson's subjective state of mind at the time of plea. See United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (S.D.N.Y.1967). In determining the nature of Jackson's plea all the surrounding circumstances must be considered. United States v. Miller, 243 F.Supp. 61 (E.D.Pa.1965), aff'd 356 F. 2d 515 (3rd Cir.1966), cert. denied 384 U.S. 981, 86 S.Ct. 1882, 16 L.Ed.2d 691. The effect of statements made to him by his own lawyers and by the United States Attorney are relevant and the fact that the judge actually made no promise to him is not determinative of the issue as the opinion of the court indicates. See United States v. Lias, 173 F.2d 685 (4th Cir.1949); 8 MOORE'S FEDERAL PRACTICE ¶ 1105 [4]; Shelton v. United States, 246 F.2d 571 (5th Cir.1957), rev'd on other grounds, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579, Note, 64 Yale L.J. 590, 594–95; United States v. Schneer, 194 F.2d 598 (3rd Cir. 1952); United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 249 (S.D.N.Y. 1966).

The circumstances of the present case reveal the need for a hearing to determine whether Jackson's plea was a valid waiver of his constitutional rights. At his arraignment on February 15, 1966, Jackson was represented by counsel of his choice and entered a not guilty plea. On June 29, 1966, the day set for Jackson's trial, there was a conference between Jackson's two lawyers and the United States Attorney and thereafter the three lawyers met with the district court judge. Jackson's attorneys then conferred with their client and thereafter asked for leave to withdraw his not guilty plea and enter a plea of guilty. The judge thereupon informed Jackson of his constitutional right to a jury trial, to be confronted with the witnesses against him, and to refuse to testify. Jackson stated that he understood the charges against him and the maximum penalty for the offense charged.

The following then took place:

The Court: Have any promises been made to you in order to induce you to change your plea?

The Defendant: Well, no—yes and no.

The Court: What do you mean "yes and no"?

The Defendant: Well, I did bring them over, I can't deny that—

The Court: No, what I am asking now is, have any promises been made to you?

The Defendant: If I tell the truth, that I did bring them over, which I did, it might be easier with me—to tell the truth, and I did bring them over. And if I did not lie about it—and I did bring them.

The Court: Have you been made any promise of leniency?

The Defendant: That I may be let off easy—if I tell the truth, it is much easier, and to tell the truth.

The Court: I want to know, Mr. Jackson,—I have discussed this matter

---

I. The standard for the necessity of a hearing on a motion to withdraw a plea of guilty is the same as that for determining the necessity for a hearing under Sec. 2255. 8 MOORE'S FEDERAL PRACTICE ¶ 32.07[4].

with your attorneys and I have made them no promises.

The Defendant: He didn't tell me you made any promises.

The Court: Whether or not you get probation will depend on a lot of things which I do not yet know; but I am not making you any promises, nor have I made any promises.

The Defendant: No, he did not make anything like that at all.

The Court: No threats have been made against you in order to induce you to change your plea?

The Defendant: No, no threat.

The Court: Do I understand this plea of guilty is made voluntarily and understandingly by you?

The Defendant: Yes, I talked it over back home with my wife and other friends and explained it to them, you know; and so that is that.

The Court: By this plea are you telling me you did transport these girls across the State line?

A. [sic] I did, and if they are here, it is just they are going to say I did, and it is two words against mine. So there is no use denying it.

The judge then accepted the plea of guilty and ordered a pre-sentence investigation report to be submitted. The sentencing hearing was held on August 5, 1966, and Jackson's counsel moved for probation based on the investigation report. The judge then asked whether the government had a recommendation. An Assistant United States Attorney who had not been present on June 29 recommended a "severe penalty," seeing no "great mitigation of circumstances." The following then took place:

The Court: Mr. Jackson, will you stand.

John Kirby Jackson, do you have anything to say in your own behalf before the Court pronounces judgment upon you?

The Defendant: I don't know what to say. I wasn't doing this—well, what I did this for was a favor, really, out having a good time with the ladies so I brought them over. I never got a nickel or nothing like that. I never got money for nothing like that in my life.

The Court: Do you know any legal reason why the Court should not pronounce judgment upon you?

The Defendant: The only thing I can say, I come across the State Line with them, and I guess that proves it. I can prove that is not my living, I never thought nothing of it. As I said, it was a matter of knowing these people for two or three weeks, having a good time, and I guess I was tricked myself, really, I was stupid. That was what really happened, I never thought nothing like this would happen.

The judge orally summarized the government's case and imposed a three to five year sentence.

At that point Jackson's counsel stated that at the conference on June 29 the United States Attorney had said he would not oppose probation, and that the judge had indicated that if the probation investigation report came in as Jackson's counsel stated it would, probation would probably be granted. The judge denied that he made any promise.[2] Jackson's counsel stated that he understood that the judge had promised probation; that he had so advised his client, and that his client's plea had been made becaused of his belief in the existence of this promise.

The judge asked whether counsel wanted to set aside the plea and try the case. Counsel said he did. The judge discussed this with the United States Attorney and the denial of the motion to withdraw followed.

2. In my view the issue of whether a promise was made is irrelevant since the only question involved is whether Jackson had been informed by his attorney that a promise had been made and that this information was the basis upon which he pleaded guilty. The statements of Jackson's attorney during the sentencing hearing led the trial judge away from this question.

The discussion between the judge and Jackson's attorney on the day of Jackson's sentencing concluded with the following exchange:

The Court: Do you *think* I promised this man that he would get probation?

Jackson's Attorney: That was my *understanding*, in the conference with myself, Mr. Shelly, the United States Attorney, this was my heart-felt *understanding*.

The Court: I never made such promise in my life, * * *

Motions to withdraw guilty pleas before sentence should be received with "great liberality," and doubts then should be resolved in favor of withdrawal, and when it appears that a plea was entered under some mistake the accused should be permitted to withdraw it. Jones v. Eyman, 9 Cir., 353 F.2d 528; United States v. Davis, 7 Cir., 212 F.2d 264. But successful challenge of denial of motions after sentence requires a showing of "manifest injustice" as a result of the ruling. United States v. Parrino, 2 Cir., 212 F.2d 919; Rule 32(d), FED.R.CRIM.P. The record here persuades me that "manifest injustice" will result to Jackson if his plea is not vacated, and his allegations—that his plea was made because his lawyer had informed him that the judge and United States Attorney had promised him probation if his record was as he represented, or alternatively that the United States Attorney had promised to recommend probation and failed to do so—are true. 8 MOORE'S FEDERAL PRACTICE ¶ 1105[4].

Jackson's answers to the judge's questions when the guilty plea was entered are somewhat ambiguous; and his statement of what he was "telling" the judge by his plea, viewed in conjunction with his statements prior to sentencing, indicates that while he did transport two girls from Illinois to Indiana, his main purposes in so doing were not the immoral purposes required for conviction under 18 U.S.C. Sec. 2421. Fisher v. United States, 266 F. 667 (4th Cir. 1920). In United States v. Lias, 173 F.2d 685 (4th Cir. 1949), the court's opinion by the late Judge Parker in persuasive dictum upheld the granting of the motion to withdraw a guilty plea where the district judge found manifest injustice on the defendant's affidavit that his plea was based on a belief that he would receive probation and his insistence that he was not guilty. Judge Parker stated the district court acted properly "if as a result of what the judge had said, the defendant was misled into pleading guilty under the belief that he would receive probation." I think that the same principle should apply where the defendant relies on representations by his lawyer that the judge or prosecuting attorney has made promises of probation. In either case the defendant is equally mistaken as to the consequences of his plea and in either case the mistake is induced by a reasonable reliance on statements of fact made by officers of the court.

A hearing on Jackson's motion could disclose, according to what his counsel stated to the court at the time of sentencing and according to the unchallenged affidavits filed in the court, that the morning of the trial in the courtroom Jackson's counsel told him that if he changed his plea to guilty the court had promised to give him probation, provided the probation report coincided with what Jackson's attorneys had represented to the court; and that Jackson pleaded guilty on that advice or that the United States Attorney had promised to recommend probation in his case and later did not do so. The record contains no response of any kind by the United States Attorney to any of these charges and certainly contains no sworn testimony by him. At a hearing, testimony by the United States Attorney, by Jackson's trial attorney, and by Jackson could be taken under oath and subject to cross-examination. Moreover, elements of the story told by Jackson's attorney are subject to independent verification. For example, Jackson's attorney alleges that the United States Attorney stated that his daughter was in the hospital and for this reason he desired to dispose of the case

quickly by means of a negotiated guilty plea. If it could be proven that the daughter was actually in the hospital, this would lend credence to Jackson's story.

The government argues that Jackson's answers to the court's questions, to the effect that his attorneys did not tell him the court had made promises, conclusively show that Jackson's plea was not made in reliance on a promise. This argument raises the question of the practice indulged in by courts in the use of the "negotiated plea of guilty." [3]

"Plea bargaining" between prosecutors and defense counsel is in common use in the administration of criminal law, is practically necessary in dealing with heavy criminal dockets and serves an important part in preserving the quality of justice in criminal courts. There is no need therefore for us to pretend the practice is not there, or to hide it from the public as something unworthy of courts of justice. It can be, if conducted fairly and forthrightly, a salutary practice, although subject to abuse and not free from question about its secrecy, needs of defendants for correction, and inducing surrender of trial.

Nevertheless "plea bargaining" is commonly practiced covertly. After the guilty plea is negotiated by the prosecutor and defense counsel and agreed to by the defendant, defendant follows the rubric of telling the court no promise has induced the plea, and while this game is played the prosecutor and defense counsel mutely corroborate the defendant's false statement. Often a court knows of the negotiations and yet plays its part in the rubric by asking the question about

any promise, knowing that the answer will be false. See Harrell v. United States, 371 F.2d 160, 163 (7th Cir. 1967) (dissenting opinion by Judge Cummings). The idea of correction of the defendant is frequently lost sight of. There is no reason for the game and the entire system of criminal law administration would be better off if everyone opened his eyes in a forthright recognition that the "plea bargaining" process is needed in the practicality of administering the criminal law. [4]

In view of these considerations we should not treat Jackson's statement when the guilty plea was entered as precluding a probability that the guilty plea was induced by advice of his counsel who misconceived the result of the hurried negotiations and conference on trial day.

This discussion should by no means be read as a criticism of the able district judge whose decision is before us. I would reverse, not because I believe that a promise was made, but because Jackson's plea might have been the result of his *belief*, induced by his lawyers, that a promise had been made.

In my opinion the circumstances shown in this record require that a hearing be conducted, on Jackson's motion, to determine whether the result of Jackson's attorney's communication to Jackson of what transpired between that attorney and the United States Attorney and district judge was to render the plea of guilty void because induced by his belief that he had been promised a concession by the United States Attorney or lenient treatment. Scott v. United States, 6 Cir., 349 F.2d 641.

---

3. As it is called in "The Challenge of Crime in a Free Society—A Report by the President's Commission on Law Enforcement and Administration of Justice."

4. The notions expressed in this dissent with respect to the "plea bargaining" process are extensively discussed in reports of the President's Commission on Law Enforcement and Administration of Justice. The Commission recommends, among other things, that the agreed disposition be openly acknowledged and fully presented to the judge for review for fairness to the defendant and the public before the plea is entered. In order that this review function be adequately performed the Commission recommends that the judge not become too involved in the negotiations, but retain sufficient independence to verify that "defendant's plea is the result of an intelligent and knowing choice and not based on misapprehension or the product of coercion."