**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert HALPIN, Defendant-Appellant. No. 15533.**

United States Court of Appeals Seventh Circuit.

Jan. 5, 1967.

Rehearing Denied Feb. 13, 1967.

Certiorari Denied May 8, 1967.

See 87 S.Ct. 1482.

Frank Oliver, Chicago, Ill., for appellant.

James B. Brennan, U. S. Atty., Franklyn M. Gimbel, Asst. U. S. Atty., Milwaukee, Wis., Thomas R. Jones, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before KNOCH, KILEY and CUMMINGS, Circuit Judges.

KILEY, Circuit Judge.

Halpin has appealed from his conviction of knowingly causing the interstate transportation of goods, knowing them to have been taken by fraud, in violation of 18 U.S.C. § 2314 (Count 20 of the indictment), and of conspiring with others to transport interstate and to receive, conceal and dispose of the goods in violation of 18 U.S.C. § 371 and 18 U.S.C. §§ 2314 & 2315 (Count 21). We affirm the conviction.

The twenty-one-count indictment charged Halpin in two counts. The conspiracy count joined Halpin, Bishop, McGuigan, Shubow, Verville, Lichterman and Wigodski. Originally Halpin, Bishop and Verville pleaded guilty. McGuigan was dismissed. Lichterman, Shubow and Wigodski were convicted after not-guilty pleas. All convictions were vacated, those of Lichterman, Shubow and Wigodski because of the knowing use of perjury by the government, those of Halpin, Bishop and Verville when on Verville's original appeal the United States Attorney confessed error in that their guilty pleas were induced by promises of light sentences. Bishop and Verville were re-tried on not-guilty pleas, and were convicted. Verville appealed and this court reversed and remanded. United States v. Verville, 355 F.2d 527 (7th Cir. 1965). Halpin had been granted a severance and his later trial resulted in the conviction before us.

The substance of the overt acts alleged in the indictment is that in July, 1958, Bishop and Verville bought Scanlon's Radio and Music Shop in Milwaukee, leased warehouse space in that city and purchased in the Scanlon name nearly a half-million dollars of merchandise on credit from approximately 1,300 suppliers in several states; that the merchandise was transported to Detroit, where Shubow and Halpin had rented warehouse space and where Shubow paid for unloading of the goods; that Halpin hired employees to work in the Detroit warehouse he had rented; and that Shubow sold the goods to various purchasers. The suppliers of the goods were not paid and the goods were sold at below-invoice prices.

■ Halpin's first contention is that the government knowingly used false or intentionally misleading testimony at his trial. Government witness Rohe, Shubow's bookkeeper, testified, over objection, that Shubow told him that $3,700 of the proceeds of sales of the goods was paid to "Verville or Halpin." Rohe had testified at the earlier Verville-Bishop trial that the money was paid to Verville.

He did not then state it was paid to Verville *or Halpin*. The same alleged conflict appeared in Rohe's testimony to two other transactions.

Witness Bellware, president of a finance and loan company in Detroit, testified in the Halpin trial that in September or October, 1958, Halpin made "demand" investments of $7,000 in the loan company, using two checks drawn by alleged co-conspirator Shubow. Asked if Verville was involved, Bellware testified that he did not recall "who exactly made the investment," and that it was a "joint investment" but was credited to Halpin's account. On cross-examination, Bellware said he did not recall who handed the checks for the investment to him. Bellware said he had testified in the Verville case that he "believed" Verville invested in the loan company in September or October, 1958. He recalled that at the Verville trial he had not testified that Halpin had "invested" the checks.

Halpin contends his conviction is rendered void by the conduct of the United States Attorney, who prosecuted both the Verville and Halpin cases, in knowingly using false testimony. He does not specify in which trial the testimony was "false." At the Verville trial, Rohe was asked if he recalled how many cash payments were made to Verville "or others," and the district court said, "Limit your question to Mr. Verville." And when asked whether the checks were paid to Verville, Rohe said Mr. Verville and Mr. Halpin represented the Scanlon Company. Accordingly, we are not persuaded that the testimony of Rohe and Bellware in the Halpin trial comes within the rule voiding convictions for the knowing use of perjured testimony.

Halpin states that declarations of alleged co-conspirators were admitted to prove the conspiracy without proof of the conspiracy's existence *having already been made*, and specifically that the statements of Verville to Bishop and those of Shubow to Rohe out of Halpin's presence were admitted to link Halpin to the conspiracy. But Halpin's claim of error is that the district court, over Halpin's objection, refused to limit these hearsay declarations properly at the time they were admitted, and that the instruction at the end of the testimony was not sufficient protection. He relies upon Lutwak v. United States, 344 U.S. 604, 618–619, 73 S.Ct. 481, 97 L.Ed. 593 (1953), and Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), in support of this claim of error.

■■ There is no requirement that the conspiracy be proved at the trial *before* the declarations are admitted, and the order in which evidence is received is within the court's discretion. United States v. Sansone, 231 F.2d 887, 893 (2d Cir.), cert. denied, 351 U.S. 987, 76 S.Ct. 1055, 100 L.Ed. 1500 (1956). The requirements are that there must be evidence of the conspiracy and the individual defendant's participation in it independent of the declarations, that the declarant must be a co-conspirator, and that the statement must be in furtherance of the conspiracy. Glasser v. United States, 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We think the evidence here stripped of the declarations made with respect to Halpin out of his presence is ample to support the admission of the declarations under these requirements.

■ There is no merit in the contention that because the hearsay declarations of Verville and Shubow related to past facts, they were not in furtherance of the conspiracy but were "mere gossip." It was in furtherance of the conspiracy that Bishop should know of Halpin's part in the conspiracy, and that Shubow's bookkeeper should know that Halpin and Grunther were the same person and know who received the proceeds of Shubow's sales of the goods. The declarations were not "mere gossip" but were in furtherance of the conspiracy. The same is true of the narrative statements of Verville to Bishop with respect to what certain conspirators had done. It was important to the common purpose that each member know his partners, what each one's part was and what had been done by each. None of these declarations was inadmissible under United States v. Nar-

done, 106 F.2d 41, 43 (2d Cir. 1939), rev'd on other grounds, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939) or United States v. Guido, 161 F.2d 492, 495 (3d Cir. 1947).

■ The district court was not required to place a limitation on the testimony of the declarations each time a declaration was admitted. Halpin's reliance upon Lutwak v. United States, 344 U.S. at 618–619, 73 S.Ct. 481, 97 L.Ed 593, and Delli Paoli v. United States, 352 U.S. at 238, 77 S.Ct. 294, 1 L.Ed.2d 278, for this proposition is misplaced. In those cases there was an immediate need for protecting defendants other than the declarant from prejudice by limiting the admissibility of the declarations. In addition, the legal basis for limitation was apparent, since at the time of admission no further evidence was needed to warrant limitation. At Halpin's trial, these factors were not present. Halpin was the only defendant and the only questions pertaining to admissibility could not be resolved except on the entire record.

The rule claimed by Halpin would unduly hamper the prosecution of conspiracy cases by placing a limitation upon evidence at the time admitted, when on the entire record, it need not be limited at all. In addition, since subsequent evidence showed the existence of the conspiracy and participation in it by the declarant and the defendant, there could be no prejudice to the defendant by reason of the failure of the trial judge to give a useless instruction to the jury.

■ Halpin relies upon our holding in United States v. Verville, 355 F.2d 527 (7th Cir. 1965), to support his claim of reversible error in admission at his trial of bankruptcy records. In *Verville* we reversed because of the admission into evidence against Verville of many documents and orders in an involuntary proceeding against Bishop, under the name of Kelly. Among these was a petition alleging that the bankrupt's assets were in danger of being "lost, destroyed or

otherwise disposed of," an order making a finding to that effect, and a list of Bishop's creditors showing claims of nearly $350,000. Verville had no opportunity to cross-examine with respect to any of this.

The records of which Halpin complains were an order adjudging Scanlon's bankrupt, petitions for employment of experts to appraise and sell Scanlon's personal property, the report of the auctioneer and an order enforcing the sale. These documents contain no damaging allegations or findings prejudicial to Halpin.

■ We see no merit in the claim of reversible error in the court's overruling the motion for a voir dire examination on the exclusion of "fruit of the poisoned tree" in the form of Bishop's testimony, which Halpin claims came from a statement of his which had previously been suppressed. Halpin's contention rests upon a pre-trial order in the Bishop and Verville trial excluding the suppressed admissions of Halpin, Bishop and Verville. The trial judge who presided over the Bishop-Verville trial presided over the Halpin trial that is before us.

There was no pre-trial conference before Halpin was tried for the purpose of excluding Halpin's admissions or this "fruit." Nor was there any intimation in the colloquy upon the Halpin motion between counsel and the trial judge—who had entered the Bishop-Verville pre-trial order—as to what testimony Bishop might or would give that depended on Halpin's admissions. There is no reference in his brief here to any testimony of Bishop's that is the fruit of Halpin's suppressed admissions. We see no error in the court's ruling that Bishop could testify from his own knowledge, irrespective of the suppressed statements. The reliance on United States v. Nardone, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939) is of no avail. We find no reversible error in the points argued.

Affirmed.