**UNITED STATES of America,
Appellee,**

v.

**Edward DeJESUS, Defen-
dant-Appellant.**

No. 74–1417.

United States Court of Appeals,
First Circuit.

Argued April 8, 1975.

Decided June 10, 1975.

Certiorari Denied Oct. 6, 1975.
See 96 S.Ct. 126.

Michael A. Paris, Boston, Mass., with whom Leppo & Paris, Boston, Mass., was on brief, for appellant.

Charles E. Chase, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, *Chief Judge,* McENTEE and CAMPBELL, *Circuit Judges.*

COFFIN, *Chief Judge.*

Defendant appeals from judgments of conviction on two counts, one charging conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, the other possession with intent to distribute and distribution in violation of 21 U.S.C. § 841(a)(1).

Agents met with a codefendant, Johnson, in Boston and discussed a purchase of five kilograms of cocaine at $20,000 a kilogram. After some delay, Johnson told the agents that his Puerto Rican connection was in town. An agent subsequently observed defendant drive to a pre-arranged meeting place where Johnson joined him in his car for a brief conversation. Later in the evening, an agent called Johnson and learned that only two kilograms were for sale, since the other three had just been sold in New York, and that the price had been increased to $22,000 a kilogram. Johnson, still later the same evening, delivered a sample; if the sample proved satisfactory, the agents were to make their purchase at about midnight.

Shortly after midnight, at the agreed-upon place, a vehicle parked behind the agents' vehicle and Johnson got out, told the agents that his man was with him with the "stuff", and entered the agents' car. One agent then entered the other car. Defendant, the driver of that car, handed him a paper bag, saying the amount was two kilograms. When the agent complained, defendant explained that he had sold the other three kilograms in New York the preceding weekend. When the agent asked the price, defendant replied, "$44,000", said the cocaine could be cut three times and that he could deliver five kilograms every ten days. At this point both Johnson and defendant were arrested.

■ This skeletal narration of the evidence suffices to dispose of defendant's claim that there was insufficient evidence to support the verdicts. Defendant would have us consider the evidence as establishing only that he was present at the delivery of the drugs. But defendant, according to testimony obviously believed by the jury, not only delivered the merchandise but also showed his awareness of the prior changes in price and quantity and the reason for the latter change, which Johnson had earlier told the agents. He also held himself out as capable of being a substantial and regular supplier. This is, on the whole, stronger and more direct evidence of participation in a conspiracy than that which we found sufficient in *United States v. Doran,* 483 F.2d 369 (1st Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111 (1974).

A second asserted ground for reversal is that the court allowed government agents to testify as to conversations with codefendant Johnson, who did not testify and was not put to trial with defendant. Beginning early in the trial a key government witness, agent Staffieri, was asked and allowed, over objection, to answer questions concerning his conversations with the absent Johnson. At the outset the court gave a limiting instruction couched as follows:

"THE COURT: . . . The evidence which I am allowing in now as to telephone conversations between this witness and Mr. Johnson is to be considered by you when you retire to deliberate, only if you find that there

was in fact a conspiracy between the defendant and Mr. Johnson and that the conversation was in furtherance of some purpose of the conspiracy and that the conversation was during the lifetime of the conspiracy."

\* \* \* \* \* \*

"I will instruct you to disregard the whole thing, if at the time the government rests, there isn't enough evidence from which you can find conspiracy, if you believe the evidence. Whether you do find it is a matter for your decision."

Apparently satisfied with this, defense counsel remained silent until the witness adverted to the "Puerto Rican connection"; overruling the objection, the court reminded the jury of its earlier limitation. When the witness related his conversation about price with Johnson, defense counsel moved for a further limiting instruction "as it affects the defendant DeJesus". The court again referred to the earlier limitation which it felt the jury understood, adding, "I don't think I need repeat it with each question, unless there is some other limitation you have in mind?" Counsel replied: "I do not know if the jury is fully instructed that none of this evidence is against DeJesus at this point, there is no conspiracy shown." The Court: "I told them it is [their] decision they have to make when they retire to deliberate. If they don't find a conspiracy, they disregard the entire line of testimony which relates only to Mr. Johnson."

The testimony of agent Staffieri continued, followed by that of agent Doyle, with frequent disclosures of conversations with Johnson, always objected to, the court often referring to its prior ruling in admitting the testimony.[1] In the charge to the jury, the court again stressed that statements attributed to

Johnson were to be considered only if the jury found that defendant "voluntarily and knowingly entered into an agreement", adding, at one point, that "in deciding whether the defendant became a member of the conspiracy, you must determine his membership on the basis of evidence as to what he said or what he did, if it appears to you that the conspiracy was in fact formed." At the conclusion of the charge, defense counsel called to the court's attention one of his requested instructions which would have told the jury that "in determining whether a particular defendant was a member of the conspiracy, if any, the jury should consider only his acts and statements. He cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed, and that he was one of its members." The court replied: "I charged that, that is my own material, what he said and what he did."

■ What was omitted from all the cautionary instructions was the admonition that the evidence to be considered by the jury in determining whether defendant was part of any conspiracy must be independent non-hearsay evidence. *United States* v. *Honneus,* 508 F.2d 566, 576–77 (1st Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975). Defendant overargues the point, saying that there was no such evidence in this case. We have disposed of such an argument in discussing the sufficiency of the evidence. Nevertheless, there remains a gap in the instructions. The government underargued its case on this point, contenting itself with asserting that there was independent evidence of defendant's role in the conspiracy, without addressing itself to the defect in instructions.

This case was tried on October 29 and 30, 1974, almost two months before our

---

1. Early in the testimony of the second witness, agent Doyle, the court reminded the jury that the testimony as to Johnson's conversations "is to be considered by them only if they find there was a conspiracy proved, to which the defendant became a knowing and voluntary member, that the conversation was during the lifetime of the conspiracy and for the purpose of advancing an aim or object of the conspiracy. Otherwise, it is to be disregarded by the jury." No suggestion for additional instructions was forthcoming from defense counsel.

decision in *Honneus,* where we stated that in cases tried subsequently the rule announced in *United States* v. *Apollo,* 476 F.2d 156, 163 (5th Cir. 1973), should be followed, requiring an instruction "explaining clearly to the jury the requirement that the conspiracy itself and each defendant's participation in it must be established by independent non-hearsay evidence which must be given either prior to the introduction of any evidence or immediately upon the first instance of such hearsay testimony."[2] Although generalized objections were raised to all offers of testimony as to Johnson's conversations, it is clear that neither the court nor defense counsel had in mind the refinement which now concerns us. This appears most directly when the court, at an early point in its sequence of rulings, inquired whether the defense had any limitation in mind other than those which had been given, and received an unenlightening answer. Not even in the objections to the final instructions did the defense clarify this point, the requested instructions being slightly better than the court's, but not explicitly excluding hearsay in the determination of participation in the alleged conspiracy. Moreover, there was no indication that counsel disagreed with the court's opinion that it had in essence given the requested instruction. We find no reversible error.

■ Finally, defendant argues that the indictment under 21 U.S.C. § 846 is faulty, in that count 1 failed to allege an overt act.[3] Defendant cites a number of cases which, on analysis, fall into three categories. Some involve conspiracy cases brought under statutes requiring allegation and proof of overt acts, such as 18 U.S.C. § 371; others involve indictments charging overt acts and the issue is whether the evidence was sufficient to prove the crime as charged, e. g., *United States* v. *Toombs,* 497 F.2d 88 (5th Cir. 1974); *United States* v. *Sarno,* 456 F.2d 875 (1st Cir. 1972); still others are cases where the court seems to assume, without discussion, that an overt act must be alleged in a prosecution under 21 U.S.C. § 846, e. g., *United States* v. *Williams,* 503 F.2d 50 (6th Cir. 1974); *United States* v. *Floyd,* 496 F.2d 982 (2d Cir. 1974); *United States* v. *Cotham,* 363 F.Supp. 851 (W.D.Texas 1973).

The only case directly dealing with the pleading requirements of 21 U.S.C. § 846, which has been called to our attention, is *United States* v. *DeViteri,* 350 F.Supp. 550 (E.D.N.Y.1972). We find compelling its analysis of authorities under predecessor statutes, 21 U.S.C. §§ 174, 176a,[4] its reference to Supreme Court interpretation of other legislation not specifically requiring an overt act, and its conclusion that Congress in enacting the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.,* of which § 846 is a part, did not intend to change the prior law relating to narcotics conspiracies, contained in §§ 174 and 176a.

Affirmed.

---

2. *See also United States* v. *Gomez-Rojas,* 507 F.2d 1213, 1223 (5th Cir. 1975).

3. The statute does not in terms require such an allegation. It reads, "Any person who attempts or conspires to commit any offense defined in this subchapter is punishable . . . ."

An additional challenge is made, on vagueness grounds, to § 846 itself. To the extent that this challenge is founded on the argument that the allegation of an overt act is necessary to supply specificity, we deal with this in the text. Insofar as it is based on the singular subject ("Any person"), and the suggestion that the statute may reach a "conspiracy" in which only one person participates, we do not think that the point merits discussion.

4. In *United States* v. *Clayton,* 450 F.2d 16, 21 n. 14 (1st Cir. 1971), *cert. denied,* 405 U.S. 975, 92 S.Ct. 1200, 31 L.Ed.2d 250 (1972), we recognized the issue as related to § 176a, but expressed no opinion as to its proper resolution.