UNITED STATES of America, Plaintiff-Appellee,

v.

John Wayne BUSCHMAN, Defendant-Appellant.

No. 75–1297.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1975.

Decided Jan. 7, 1976.

William M. Coffey, John D. Murray, Milwaukee, Wis., for defendant-appellant.

William J. Mulligan, U. S. Atty., Randall J. Sandfort, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and PELL and BAUER, Circuit Judges.

PELL, Circuit Judge.

The defendant, John Wayne Buschman, after a jury trial, was convicted of knowingly engaging in the business of dealing in firearms without being licensed in violation of 18 U.S.C. §§ 922(a)(1), 924(a), and 2 (Count One), and of knowingly receiving and possessing firearms, after having been convicted of a felony, in violation of 18 U.S.C. (Appendix) § 1202(a)(1) and § 2. (Count Two). The defendant was sentenced to the custody of the Attorney General for a period of two-and-a-half years on Count One and for a period of one year on Count Two, said sentences to run concurrently. The defendant appeals from the judgments of conviction.

## I. History of the Case

On April 2, 1974, Agents Heavey and Jorgensen of the Bureau of Alcohol, Tobacco and Firearms, in an undercover capacity, accompanied by Raymond Ferro, a Government informer, went to a tavern in Milwaukee, Wisconsin. The purpose was to attempt to purchase firearms. Joseph Stoll first appeared on the scene and indicated he was involved in the planned sale but had to wait for associates. Joseph Koller next appeared and, although there was conversation about firearms, he also indicated the necessity to wait for an associate. The defendant Buschman subsequently came to the tavern but went to the rear thereof.

Koller and Stoll left their table and joined him. They returned to the table of the agents with a paper given them by the defendant upon which paper appeared a description of various firearms. Heavey selected ten of the items which he listed on a sheet of paper which Koller and Stoll then took back to Buschman. The three men conferred for a few minutes. Stoll and Buschman then left the tavern and drove away in Stoll's station wagon.

An hour or so later, Stoll and the defendant returned. Buschman entered the tavern. The agents, Stoll and Koller went to the station wagon and inspected boxes that contained firearms. The firearms were then placed in the agents' car. Heavey gave the purchase price of $1,000.00 to Koller who then walked to the rear of the tavern and gave "some money" to Buschman and Stoll. The defendant left the tavern.

The foregoing summary of the activity occurring at the tavern was based upon the testimony of the agents. The defendant testified to a substantially different version of the evening's events.

The sole issue in this appeal is whether the trial court erred in denying the defendant's request for a cautionary instruction at the time hearsay testimony concerning statements made by Stoll and Koller was offered, which testimony was admitted on a "joint venture" theory.

The statements incriminated and implicated the defendant in the offenses charged. The defense took the position that the Government, at that point in the trial, had not introduced any independent evidence to establish a joint venture and that a joint venture must be established by such non-hearsay evidence. After the Government acknowledged that it had not yet established the joint venture by independent ·evidence, the trial court ruled that it would admit the hearsay testimony, subject to the condition that the Government later establish independent evidence of joint activity.

The defense thereupon requested the court to instruct the jury that it could not consider the hearsay as evidence unless and until the Government had established that there was a joint venture, and that the joint venture must be established by independent evidence.[1] In its denial of the defendant's request the court viewed the question of admissibility as a matter of law for its determination, not a question of fact to be decided by the jury. At the end of the Government's case, the defendant made a motion for judgment of acquittal based on the insufficiency of the evidence adduced by the Government and, alternatively, moved for a mistrial based on the failure of the Government to establish by independent evidence that the defendant was a party in the joint venture. The court denied both motions and stated its con-

clusion that the Government had indeed offered sufficient independent evidence connecting the defendant with the joint venture of the other two coindictees. The appellant concedes that the court, in its final charge, appropriately instructed the jury concerning the hearsay testimony and the use to which it could be put.[2]

## II. Sufficiency of the Evidence

■ As an initial matter, we note that this criminal prosecution was not one involving a conspiracy count, even though the disputed hearsay testimony was received on the basis of a "joint venture" exception to the hearsay rule. This court has on numerous occasions recognized that where a "joint venture" is established by independent evidence, declarations made in furtherance of the venture are admissible against a party who is not present. This is true, even though, as here, no conspiracy is alleged. *United States v. Bernard,* 287 F.2d 715 (7th Cir. 1961), *cert. denied,* 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253; *United States v. Lawler,* 413 F.2d 622 (7th Cir. 1969), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 698, 24 L.Ed.2d 691 (1970); *United States v. Spencer,* 415 F.2d 1301 (7th Cir. 1969); and *United States v. Jones,* 438 F.2d 461 (7th Cir. 1971).

■ We do not understand the appellant to challenge the district court ruling that there was sufficient independent evidence to establish the joint crim-

1. "COURT: Now, as to the merits—without reference then to the conditional acceptance, do either counsel have anything else to add?

"MR. COFFEY: Yes, I would then ask—request the Court that at any time the Government elicits hearsay testimony from this witness in terms of what someone said to him outside of the presence of the defendant, that the jury be instructed that they may not consider that testimony and evidence against the defendant unless and until the Government has established beyond a reasonable doubt that there is a joint venture; and further that the Government may not prove a joint venture by the way of hearsay declarations. . . . You may not prove a conspiracy on the basis of hearsay declarations, and I think they cannot prove the joint venture by hearsay declarations, and I'd ask the jury be given those cautionary instructions.

"COURT: I don't think it's going to be a jury problem; I think it's going to be the Court's problem. It seems to me that I don't have to burden this jury with the conditional character of the evidence. It's coming in; it's coming in obviously before there has · been any proof of joint venture or common plan. I accept your statement, Mr. Coffey, that it has to be proved by independent evidence, and if the Government at the conclusion of its case has not established independent evidence of joint activity, I will entertain and grant your motion for a mistrial."

2. The court's exposition of the particular subject under consideration here is detailed, occupying two pages of the transcript.

inal venture. In a conspiracy prosecution, which technically this case was not, the sufficiency of the evidence requires close scrutiny. *United States v. Cortwright, et al.,* —— F.2d ——, at —— (7th Cir. 1975). In a conspiracy prosecution, a reviewing court must make an independent evaluation of the record to determine, first, whether sufficient evidence was presented for a jury to conclude beyond a reasonable doubt that the conspiracy existed and, second, whether there was sufficient non-hearsay evidence by which the jury could tie each defendant to the conspiracy. *Id.* Although the language of *Cortwright* does not expressly rule whether a similar obligation rests upon this court in a prosecution embodying a "joint venture" theory, we have nonetheless reviewed the evidence regarding the conflicting versions of the events of April 2, 1974. Viewing as we must the evidence in the light most favorable to the Government, *United States v. Rajewski,* 526 F.2d 149 (7th Cir. 1975), we conclude that there was sufficient evidence for the jury to find that Buschman was a participant in a joint criminal venture.

## III. *Halpin* and *Apollo*?

■ The narrow issue in the present appeal is whether the trial court must give a cautionary instruction prior to the time that hearsay statements of one engaged in a joint criminal venture are received into evidence.[3] Although it is possible to draw narrow technical distinctions between cases involving conspiracy or joint-venture theories, the legal analysis applicable to evidentiary rules must, by its very nature, be the same. See *United States v. Lucido,* 486 F.2d 868, 869 n.3 (6th Cir. 1973). Viewed

in that light, the broader problem lurking in this appeal is whether this court should follow its own precedent regarding the co-conspirator exception or should adopt a new approach charted by the First and Fifth Circuits.

The defendant-appellant argues that the use of a proper instruction at the conclusion of the trial cannot cure the erroneous refusal to give a proper instruction, upon a timely request, when the hearsay · testimony is first elicited. Buschman cites *United States v. Apollo,* 476 F.2d 156 (5th Cir. 1973), and *United States v. Honneus,* 508 F.2d 566 (1st Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975), as authority for his position. In recognition of the relevance of these cases, the Government asserts that *United States v. Halpin,* 374 F.2d 493 (7th Cir. 1967), *cert. denied,* 386 U.S. 1032, 87 S.Ct. 1482, 18 L.Ed.2d 594, has effectively established the law of this circuit on the narrow issue presented in this appeal.

We find persuasive the Government's analysis of the *Halpin* decision. In that case, *supra* at 495, the appellant claimed that the trial court erred in refusing, over objection, to limit hearsay declarations properly *at the time they were admitted* (emphasis supplied) and that the instruction given at the end of the testimony was not sufficient protection. *Id.* In *Halpin,* as here, only one defendant was on trial. This court ruled expressly that there was no requirement that the conspiracy [joint venture] be independently proved at the trial before the hearsay declarations were admitted. It also ruled that the order in which evidence is received is within the trial court's discretion. As previously noted, the *Halpin* decision also passed on an

---

**3.** The defendant-appellant does not now argue that a proper cautionary instruction must be given by the trial court *each time* that hearsay testimony is admitted into evidence by means of the co-conspirator or joint-venture exceptions to the hearsay rule. We specifically note the thrust of the appellant's present argument, because defense counsel at the trial asked for an instruction "at any time the Government elicits hearsay testimony . . .." Note 1

*supra.* As noted hereinafter, any such contention must fail in the light of *United States v. Halpin,* 374 F.2d 493, 496 (7th Cir. 1967), *cert. denied,* 386 U.S. 1032, 87 S.Ct. 1482, 18 L.Ed.2d 594, which specifically ruled, in a context analogous to that here, that "[t]he district court was not required to place a limitation on the testimony of the declarations *each time* a declaration was admitted." (Emphasis supplied.)

issue not urged in this appeal by determining that the district court was not required to place a limitation on the hearsay testimony each time a declaration was admitted. *Id.* at 496.

In sum, *Halpin* effectively disposed of all the issues raised in this appeal. In that case, as here, the appellant was relying on *Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 1352 (1953). We then ruled, and now reaffirm that such reliance was misplaced. We remain persuaded that *Halpin* correctly interpreted the thrust of the language in *Lutwak.*[4] Since Halpin was the only defendant, the evidentiary questions could not be resolved except on the entire record. The rule claimed then by Halpin, and now by Buschman, would unduly hamper the prosecution of conspiracy or joint venture cases by placing a limitation upon evidence at the time admitted when, on the entire record, it would have been demonstrated that it need not have been limited at all. The proceedings in *Halpin* were roughly analogous to those in this case. Just as subsequent evidence in that case showed the existence of the conspiracy and participation in it by Verville and Shubow as well as Halpin, so also the independent evidence in this case showed the existence of a joint criminal venture and participation in it by Stoll and Koller as well as Buschman.

There is no reason to conclude that the *Halpin* language is not equally applicable to the present case. Here, as in *Halpin,* "there could be no prejudice to the defendant by reason of the failure of the trial judge to give a useless instruction to the jury." *Halpin, supra,* 374 F.2d at 496. We are reinforced in this conclusion by appellant's acceptance

of the essential equivalence of the joint-venture and co-conspirator exceptions to the hearsay rule. Indeed, at oral argument, counsel conceded that he had no problem with the concept of the co-conspirator exception applying in joint-venture cases. Appellant argues that *Halpin* is distinguishable, but gives no grounds for drawing any distinction. This effort at distinguishing the cases aims essentially at the Government's assertion that this court has already addressed the question raised in this appeal and, in fact, has ruled on the issue.

Further, we are not persuaded that the rationale of *Apollo* is inconsistent with this court's analysis in *Halpin.* In *Apollo,* the defendant promptly objected to the introduction of extra-judicial statements linking him to a conspiracy to smuggle untaxed marijuana into the United States. Not only did the trial court overrule the objection, but it further stated in the presence of the jury that " 'connection with conspiracy must of necessity be established by some hearsay in this kind of case.' " *Id.* at 163. On appeal, the Fifth Circuit expressly ruled that the order of admission of proof in a conspiracy case was a matter of discretion of the trial court, and it also stated that "[t]estimony concerning the declarations of co-conspirators *may* be admitted before the existence of the conspiracy is established by independent evidence." *Id.* (Emphasis in original.)

On the facts of that case, however, the Fifth Circuit apparently concluded that the trial court had not sufficiently conditioned the minds of the jurors to the end that they would not fail to remember none of the "veritable flood of similar hearsay testimony" could bootstrap the necessary establishment of the conspir-

---

**4.** In his opinion for a divided Court, Mr. Justice Minton wrote, "These declarations must be carefully and clearly limited by the court at the time of their admission and the jury instructed as to such declarations and the limitations put upon them." *Lutwak, supra* 344 U.S. at 619, 73 S.Ct. at 490. The context of this statement, however, indicates that Justice Minton was referring to "declarations admissible only as to the declarant and those present

who by their silence or other conduct assent to the truth of the declaration," *id.,* and not to "evidence as to declarations that is admissible as against all of the alleged conspirators." *Id.* 344 U.S. at 618–19, 73 S.Ct. at 490. Moreover, the broader context of the opinion indicates that the entire discussion related to relevant declarations of one of the conspirators *after the conspiracy* had ended. *Id.* at 618, 73 S.Ct. 481. (Emphasis supplied.)

acy itself "by first-hand proof." *Id.* at 163. The court found that the trial record contained marginally sufficient non-hearsay evidence to support Apollo's convictions, *id.* at 162, but ruled that the verdicts could not be permitted to stand because, virtually from the trial outset, the court allowed the Government erroneous hearsay shortcuts. The reviewing court read *Lutwak,* as establishing as a minimum obligation on the trial judge in a conspiracy case in which extra-judicial statements of alleged co-conspirators are proffered to give a cautionary instruction on the limited uses of hearsay testimony, explaining clearly to the jury the requirement that the conspiracy itself and each defendant's participation must be established by independent non-hearsay evidence, which instruction must be given either prior to the introduction of any evidence or immediately upon the first instance of such testimony. *Id.* at 163.

The Government argues that, in all likelihood, the Fifth Circuit in *Apollo* was concerned with the complete failure of the trial court to protect in any way the defendant from prejudicial hearsay statements. We think that the Fifth Circuit itself has provided authority for this reading of the case. In *United States v. Moore,* 505 F.2d 620, 623-24 (5th Cir. 1974), the court reviewed the *Apollo* case. It expressly noted, *id.* at 624 n.6, that "*Apollo* was a weak case in which excessive, uncautioned hearsay testimony likely created substantial prejudice." The court also observed that, unless manifest prejudice was shown, an untimely request for an *Apollo* instruction would preclude a finding of error on appeal. The court responded to the appellant's request that it reverse his conviction because the trial court failed to give an instruction by stating:

"It would seem to be harmless error, if error at all, for a court to fail to limit a jury's consideration of hearsay testimony when the evidence *aliunde* strongly indicates both the existence of a conspiracy and a defendant's participation therein. In such circum-

stances, the jury may impute acts and statements to co-conspirators without restriction, and a cautionary instruction turns out to be a meaningless gesture." *Id.* at 624.

Nonetheless, this language cannot be viewed as any substantial abridgement or limitation of the *Apollo* rule, for a subsequent decision indicates its continuing viability.

In *United States v. Beasley,* 513 F.2d 309 (5th Cir. 1975), the appellants were tried together with two other alleged co-conspirators. The trial record revealed more than one instance, on cross-examination of one of the alleged co-conspirators and in the rebuttal presentation of IRS agents, where extra-judicial statements were admitted without limitation to the declarant at the time of their admission. In a lengthy in-chambers conference, there was a line-by-line consideration of five memoranda of interviews by one IRS agent with the alleged co-conspirator. The defense counsel objected to the court's permitting the cross-examination of the alleged co-conspirator respecting the same, but the court ruled that they could be used for cross-examination purposes and, reserving to the defendants a continuing objection (as was done in the present appeal), overruled the objections. There was no motion to limit the evidence to the impeachment of the alleged co-conspirator, and no limitation was placed on its use prior to or at the time of its admission.

On these facts, the court reviewed both *Lutwak* and *Apollo.* After focusing analysis on other cases where cautionary instruction limiting prior inconsistent statements to impeachment purposes were not given, the court went on to state:

"Although there was enough non-hearsay evidence in this record to support a conviction, such evidence was not overwhelming, as in *Lutwak,* nor so narrowly restricted in the number of statements.

"The court erred in failing to limit the effect of the hearsay evidence to

the impeachment of Clewis in conformity with the rules prescribed in *Lutwak* and *Apollo.*" *Id.* at 313.

In that case, as in this, the trial court had correctly admonished the jury in its final charge as to statements and acts not done during the continuance and in furtherance of the conspiracy. However, the final charge did not specifically address the extra-judicial statements admitted without limitation. In sum, the court agreed that the final charge, generally correct in its statement of the law, was too little and came too late.

Thus, the Fifth Circuit has firmly established the rule that, under circumstances where defendants suffer manifest prejudice, a trial court errs if it fails to give a cautionary instruction regarding the co-conspirator exception upon a defendant's initial and timely request. The First Circuit has also adopted this approach. While the Fifth Circuit has touched upon this issue in a number of recent cases, the First Circuit has faced the problem only in *United States v. Honneus,* 508 F.2d 566 (1st Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975), and in *United States v. DeJesus,* 520 F.2d 298 (1st Cir. 1975).

In *Honneus,* several defendants were being jointly tried on a conspiracy charge. Early in the trial, as a precedent for a number of occasions thereafter, the Government asked a witness whether he had had a conversation with Honneus relating to the others. Counsel for another defendant objected. Before receiving the testimony, the trial court instructed the jury that declarations affecting other alleged members of the conspiracy, not present at the time the statements were made, were not to be considered against them unless the jury was satisfied that they were, in fact, members of the conspiracy. However, the court failed to instruct that the existence of the conspiracy and defendant's participation therein had to be established by independent non-hearsay evidence before the jury could consider against Honneus a co-conspirator's hearsay statement. No counsel pointed out this gap in the instruction, and the court did not cover the *aliunde* requirement until the final charge.

On appeal, Honneus argued that the proper instruction came too late. The court recognized that, absent proper objection at the trial, the appellant had to show plain error in order to sustain his contention. The court noted that a jury has no experience in, or presumably knowledge of, the hearsay rule. Unguided, it would be most natural for the jury, in endeavoring to ascertain whether the defendants were in fact members of the conspiracy, to consider all evidence that apparently bore thereon. The court expressed its agreement with the rule articulated in *Apollo. Id.* at 577. However, it expressly stated that no previous case in the circuit had established that it might be plain error not to charge, a priori, on the the requirement that the conspiracy and the defendant's participation in it must be established by independent non-hearsay evidence. It then continued:

> "Moreover, in the present case the independent non-hearsay evidence tying Honneus to the conspiracy was adequate by any standard. We thus do not find plain error. The *Apollo* rule should, however, be observed in conspiracy cases hereafter tried in this circuit. Failure to do so will result in reversal in any case where we believe the omission to have affected substantial rights." *Id.* at 577.

We think the quoted language amply supports the Government's observation, made at oral argument, that *Honneus* did not find plain error on the facts of that case.

However, *Honneus* does not represent the First Circuit's last word on this question. In *DeJesus,* the trial court allowed Government agents to testify as to conversations with a co-defendant Johnson, who did not testify and was not put to trial with DeJesus. Beginning early in the trial a key Government witness was asked and allowed, over objection, to answer questions concerning his conversa-

tions with the absent Johnson. At the outset the court gave a limiting instruction, which was later repeated when a second Government agent gave testimony as to Johnson's conversations, but omitted from the cautionary instructions the admonition that the evidence to be considered by the jury in determining whether DeJesus was part of any conspiracy must be independent non-hearsay evidence.

On appeal, the appellant asserted as ground for reversal the failure to give a full instruction at the time the hearsay testimony was first admitted. The trial record revealed that the trial judge had requested of counsel whether the defense had any limitations in mind other than those which it had given, but received an unenlightening answer. See *id.* at 300. Moreover, the case was tried almost two months before the decision in *Honneus,* where the court had stated that in cases tried subsequently the *Apollo* rule should be followed. *Id.* at 300–01. The court recognized that generalized objections had been raised to all offers of testimony as to Johnson's conversations, but it thought it clear that neither the trial court nor defense counsel had in mind the specific gap in instructions which presented the basic problem in the appeal. On these facts, the First Circuit stated:

> "Not even in the objections to the final instructions did the defense clarify this point, the requested instructions being slightly better than the court's, but not explicitly excluding hearsay in the determination of participation in the alleged conspiracy. Moreover, there was no indication that counsel disagreed with the court's opinion that it had in essence given the requested instruction. We find no reversible error." *Id.* at 301.

We think the fair implication of this language is that the First Circuit *might* have found error affecting substantial rights of the defendant had the trial taken place after publication of the *Honneus* decision and had defense counsel specifically brought to the attention of

the trial court the gap in its instruction to the jury.

A review of the aforesaid cases, wherein the Courts of Appeals have extended the *Lutwak* ruling beyond the narrow facts of that case, does not convince us that the present appeal presents a proper vehicle for distinguishing *Halpin.* The facts of the present case are not exactly identical with any of those which we have set forth in summary detail. Of course, we do not confront the procedural omissions of defense counsel in *Honneus* and *DeJesus.* Here, Buschman's counsel timely submitted his request for a cautionary instruction and, in clear terms, see note 1 *supra,* advised the trial court of the specific grounds for his objection to the hearsay testimony. Thus, we do not face the plain error provision of Fed.R.Crim.P. 52(b). Moreover, we recognize that *United States v. Kahn,* 381 F.2d 824, 838–39 (7th Cir. 1967), *cert. denied,* 389 U.S. 1015, 88 S.Ct. 59, 19 L.Ed.2d 661, impliedly suggests that preferable trial procedure calls for an instruction that, in determining whether any particular defendant was a member of a conspiracy [or joint venture], the jury should consider only his own acts and statements. It would appear to us in most cases that the trial court would be well advised, particularly when appropriate request has been made, to make it clear at the outset to the jury that the hearsay testimony which they would hear was being heard by them on the conditional basis that the defendant during the course of the trial must be shown by independent non-hearsay evidence to have been at the pertinent times either a joint-venturer or a co-conspirator. On the full record of the present case, however, we hold that the trial court did not abuse its discretion in refusing to give the instruction.

At the time of the initial defense request, the trial court faced the practical problem of determining whether there was any real need for an instruction regarding the *aliunde* requirement for the co-venturer hearsay exception. The ob-

jection came at the very beginning of the trial; and the court had to grapple with the realistic possibility that, if the Government produced sufficient independent, non-hearsay evidence of the joint criminal venture and of Buschman's participation in it, the declarations of co-indictees Stoll and Koller would be admissible without limitation against defendant Buschman. In short, there was no real problem of jury confusion because of the kinds of difficulties arising under conditions of joint trial or because of the conceptual subtlety of limited admissibility.

In the present case, as we have held, there was adequate *aliunde* evidence to establish the joint venture in the sale of the firearms. Moreover, the trial record does not disclose a single instance when a hearsay statement was improperly admitted against Buschman. Had there been excessive, uncautioned hearsay testimony likely to create substantial prejudice, there might have been more substance to the *Apollo* argument. In this case, however, there was but one defendant and full admissibility. We conclude that, in such circumstances, particularly where the trial court expressly stated that it would grant a mistrial should the Government fail to connect Buschman with the alleged joint venture, the defendant can hardly allege that he was manifestly prejudiced by the court's initial decision to allow the Government to introduce hearsay statements subject to a connection requirement.

In this case, the complete and correct instruction given at the final charge was neither too little nor too late. The appellant concedes that rulings focusing upon the order of proof are discretionary, and we think that the trial court properly exercised its discretion in terms of the order in which evidence would come in. We think that under *Kahn,* the trial court could have determined to grant the defendant's request for a cautionary instruction. Also, however, under *Kahn* the present trial court had discretion in handling the matter as it did. The Government asserts that *United States v. Ragland,* 375 F.2d 471 (2d Cir. 1967), *cert. denied,* 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968), supports its alternative argument that the preliminary question of admissibility *qua* competency was one for the judge and not the jury. We need not consider the applicability of that argument, for the facts of this case establish that the trial court's refusal to grant the initial request for the cautionary instruction, if error, would be harmless beyond a reasonable doubt under Fed.R.Crim.P. 52(a).

Because there was no prejudicial error affecting substantive rights, the judgment of conviction is affirmed.

Affirmed.